Amet vs. Boyer et als.

---

## No. 10,841.

### VOLCY AMET VS. A. L. BOYER ET ALS.

1. In case an owner of real estate, title to which is derived by inheritance, is reinstated in possession by means of a comproimse and retrocession on the part of an adverse claimant, and she subsequently conveys it to another, who is thereafter evicted by the instrumentality of a mortgage consented and recorded against it in the meantime, and which is made effective by reason of said acknowledgment and retrocession not having been recorded as a conveyance; *Held*, that the right of action of the heir against the party retroceding the title for the reparation of losses sustained on account of the eviction of her vendee arises as soon as her vendee recovers judgment against her on that account.

2. The petition of such an heir, alleging such a state of facts, discloses a cause of action as against the party who made the retrocession of the land; for, notwithstanding the petitioner was primarily guilty of fault in not properly and in time having the retrocession in her favor recorded, that fault in no way contributed to the fault of the defendant in fraudulently and surreptitiously recording a mortgage against it in favor of another, and third persons *five years subsequently*. There is not a causal connection between these acts of neglect and wrong-doing.

3. Such transferee and evicted vendee having instituted suit against his vendor for the consequences of eviction, and she having called in warranty said party retroceding the title to her, and he, on his own exception, having been discharged on the ground that the call in warranty was inadmissible; *Held*, that such a decree as that sustaining the exception of no cause of action can not be maintained as *res judicata* in respect to such a suit as that above indicated, to which a like plea of no cause of action is urged.

Amet vs. Boyer et als.

4. The action instituted by the heir in such case, is one sounding in damages *ex delicto*, as it is for the recovery of damages inflicted upon her by the means, and as the result, of the illegal and wrongful acts of the party retroceding the property in recording a mortgage thereon which occasioned her vendee's eviction, and was the foundation of the judgment against her. Such a claim only confers a right of action from the date of the judgment fixing the amount of the vendee's loss, and which is the measure of her damage.

5. A retrocession is not a *new* title, but the recognition of one previously existing in another.

A PPEAL from the Twelfth District Court, Parish of Avoyelles. Coco, J.

*Irion & Lafargue* for Plaintiff and Appellee:

Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it. Art. 2315, C. C.

The right of action arises when the final judgment causing damages is obtained, and not when payment is made. 25 An. 307.

Damages are caused the moment a final judgment is entered against a person and his right of action for the recovery of same thereon arises.

Upon a charge of complicity in a fraud, in an action for recovery of damages, persons must be made parties to defend themselves against the charge of fraud made against them. 40 An. 157. It is not necessary to ask a money judgment against them.

Exceptions of no cause of action and *res judicata* are answers to the merits, and should be so declared in an action for damages for alleged frauds. ·

Courts have it in their power to declare a paper styled a peremptory exception an answer to the merits. 20 An. 428.

The plea of no cause of action admits all the allegations in petition, and when tried as an answer on the merits the defendant can not be permitted to contradict this admission by other allegations or proof.

The judicial admission of the allegation in petition relieves the court of the investigation as to whether or not the plaintiff has proven her case, and the only question is, "Does the petition set forth a cause of action?"

A judgment rendered in a previous suit between the same parties has not the force of *res adjudicata* when the matter at issue in the previous suit was different. 31 An. 1.

A judgment of dismissal of a call in warranty, which in express terms reserves any right of action to one whose demand is thus dismissed, is not a bar to a separate action afterward between the same parties. A plea of *res adjudicata* based upon such judgment will not in said action be entertained.

A judgment that constitutes a bar to another suit must be rendered in a proceeding between the same parties, or their privies, and the point of controversy must be the same in both cases and determined on its merits. If the first suit was dismissed for defect of pleadings, or parties, or a misconception of the form of proceeding, or the want of jurisdiction, or was disposed of on any ground which did not go to the merits of the action, the judgment rendered will prove no bar to another suit. 4 Wall. 232.

Amct vs. Boyer et als.

To maintain the plea of *res judicata* there must be an identity of parties, of capacity, of object and of cause. 30 An. 861.

Prescription-commences to run only from the moment the right of action accrues. 12 An. 161.

It does not run while there is an inability to sue. 20 An. 171.

The right of action arises when the final judgment is rendered. 25 An. 307.

A suit for damages, based on the article of the Code which provides that every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it, prescribes in one year from the time the damage was actually sustained. 20 An. 171.

When there is a continuation of a wrongful act, prescription commences to run ·from the day the damage was sustained. 16 An. 354.

Prescription begins, not from the time of the wrongful act, but from the time the damage was sustained in consequence of it. 36 An. 450.

A tutor who declares in articles of agreement, submitting differences existing between tutors and wards to an arbitrator, that his title to land bought at sale of his ward's parents' succession is null, and declares in said paper that he returns said land to his ward and co-heirs, and afterward, in a supplemental tableau, reiterates the fact that he so returned the land, are judicial admissions which estop him from denying said ward and her co-heirs to be owners of said land, and from setting up title to it himself for want of registry of said articles of agreement. A tutor who mortgages land under said circumstances will be mulcted in damages.

Articles of agreement submitting the differences existing beteen tutors and wards to an amicable compounder, and upon which judgment was based, are law as to said parties. The right to deny or oppose any provisions of said agreement will not be allowed.

Damages will be allowed to extent of injury suffered. When act is malicious, exemplary damages will be added.

---

## *Thorpe & Peterman* for Defendants and Appellants:

1. Where an evicted vendee recovers judgment against his vendor, suit by the latter against the alleged author of the cause of eviction for damages is premature if instituted before payment of the vendee's judgment, and the penalty is dismissal of the suit. C. P., Article 158; 7 La. 290; 10 La. 120; 13 La. 403; 15 An. 707-8; 24 An. 50; 31 An. 121; 40 An. 46.

2. A judgment maintaining an exception of no cause of action, urging that plaintiff prays for relief which can not be granted according to law, will support the plea of *res judicata* to a petition disclosing the same cause of action between the same parties and for the same relief. By the cause of action is meant the immediate facts or circumstances, on proof of which the party's right of recovery depends. The cause of action is the same when the same evidence will support both actions, although the action may happen to be brought in different forms. R. C. C., Article 2286; 2 Starkie on Ev., Sec. 61, 2 Sm. L. C. (Hare and Wallace), 668, 809; Herman on Estoppel, 26, 32, 44, 68, 99; Hilliard on Torts, 27; 14 La. 235-4; 19 Ibid., 328; 3 An. 174; 14 La. 58; 12 An. 198-9; 23 An. 619; 33 An 1369; 34 An. 814, 815; 35 An. 553; 32 An. 829; 8 La. 187; 14 La. 139; 26 An. 320.

3. The unexplained use of the words "reserving to the plaintiff whatever rights; he may have" or "without prejudice," in a judgment sustaining an exception of no cause of action, can not be construed to authorize the renewal of the suit against the same party for the same cause of action and substantially for the same relief, nor can such words deprive the judgment of its character and effect as *res judicata*. 3 F.. 69; 30 An. 230; 23 An. 619; 32 An. 829.

4. A purchase by a tutor at his own sale of property in which his minor has an undivided interest, if null, is only relatively so, and will prevail until its. nullity is sought and decreed in a direct action against all parties to the sale 16 An. 135.

5. Neither the judicial nor extra judicial declarations of a purchaser at a public sale can be allowed to impeach a judicial title. 41 An. 1126.

6. Title to property can only be shown by one of the modes designated by law as capable of being the vehicle of ownership. 5 An. 433.

7. For breach of a grantor's warranty no other measure of damages than those prescribed by the Civil Code can be employed. 6 An. 295; 20 An. 260.

8. The consenting of conveyance of or incumbrance upon the property of another, if actionable, is a *quasi* offence and gives only the action for damages *ex delicto*. The prescription of one year applies and runs from the day after the making of the act of conveyance or incumbrance. 31 An. 553; 39 An. 28, 29; R. C.'C., Arts. 2315, 3536; 12 An. 346; 13 An. 126, 609; 14 An. 590; 15 An. 418; 2 An. 200; 6 R. 382; 6 M.' (N. S.) 691; 2 M. (N. S.) 24; 20 An. 171; 12 An. 357; 10 An. 656; 6 R. 382; 31 An. 528; 24 Penn. St. R. 144.

9. Acts of others, subsequent to defendant's acts alleged to be tortious, do not make him responsible in damages unless those acts be the inevitable consequence of that of defendant. One who is himself in fault can not recover damages for a wrong resulting from such fault, although the party causing the injury be not justifiable under the laws. 1 Suth. on Dam 51, 53; Hilliard on Torts, 27; 10 An. 656; 28 An. 710; 4 Gray, 395.

10. After asserting claims as a creditor for the price of property sold, a vendor or any one under him is estopped from denying the character and reality which he has attached to the transaction, and real tender is an essential condition precedent to a suit to annul a judicial sale. 39 An. 107; 37 An. 875; 42 An. —.

11. An instrument of writing containing neither description, price nor express words of present grant and contemplating further acts to be done by the parties is not a conveyance of immovable property under the law of Louisiana. 11 An. 87; 37 An. 751; 10 An. 160; 13 An. 361; 28 An. 725; 30 An. 1117; 34 An. 677; 40 An. 712.

12. A compromise is a contract, and, to have the force of the things adjudged, it must be perfect and complete in itself and leave nothing for ascertainment by parol proof. 8 So. R. 539.

---

The opinion of the court was delivered by

Watkins, J. Plaintiff claims $5000 against A. L. Boyer as damages. sustained at his hands and through his illegal and tortious acts, in reference to a tract of land which was the subject of a protracted litigation, and of which she was the owner by virtue of an inheritance from her mother's succession, in part, and from a deceased brother and sister, in part.

Jacques A. Boyer, brother of A. L., and one Henry Bielkiewicz, are made parties defendant and cited, though no judgment against them is prayed for.

The immediate cause of plaintiff's suit is the alleged rendition of a final judgment against her for the sum of $3477.05, in the suit entitled Jacques A. Boyer vs. Volcy Amet, 41 An. 721. And that that suit and judgment were the successors and supplements of the preceding suit entitled Jacques A. Boyer vs. L. A. Joffrion, sheriff, et al., 40 An. 657.

As this claim is the sequence of a protracted litigation, in which the plaintiff (only recently arrived at her majority) and her two uncles (only recently discharged from their trusts, the tutorship of herself and her brother and sister, and the administration of their father's and mother's estates) figured as parties litigant, in sundry capacities, the correctness of its allowance or rejection must depend in a great measure upon a careful statement of the facts and allegations pertinent to the issues raised therein.

The following is a fair synopsis of the plaintiff's claim, viz:

1. That upon the death of her father and mother, the defendant, A. L. Boyer, became the tutor of her sister, and J. A. Boyer became the tutor of her brother and herself and the administrator of their father's and mother's successions.

2. That among the properties belonging to . siad mother's estate was the tract of land which serves as the foundation of this demand, and of which said tutors caused a pretended sale to be made on the 18th of May, 1878, and thereat same was adjudicated, ostensibly, to Henry Bielkiewicz who was a party interposed to accept title for said A. L. Boyer.

3. That said sale was illegal, null and void, being fraudulent and simulated—a fraud practised upon the minors whereby their title was never really and actually divested, and which vested no title in the alleged purchaser.

4. That after her majority and marriage she instituted suit against both of said tutors, calling upon them for accounts, etc., and finally all the matters therein involved were, by the mutual consent of all parties, submitted to arbitration, and appropriate articles of agreement were drawn and signed.

5. That one of the questions which was settled and determined by the arbitration was, that A. L. Boyer had acquired no title to the

land specified, and that the paper title he held was a nullity, and that the land was ordered to be returned to the heirs of her mother, Palmyra Boyer, of whom she is the sole surviving heir, her brother and sister having died meanwhile.

6. That, in pursuance of the award of the amicable compounder, plaintiff, as sole heir of her mother, entered into possession of said property in 1881, and in December, 1885, sold it to J. A. Boyer; and that, in May, 1886, the defendant, A. L. Boyer, *taking advantage of the fact of his act of retrocession to her not having been recorded in the proper conveyance office*, consented a mortgage upon it in favor of Jean Artigues for $1550, which was subsequently foreclosed, her vendee evicted, and she by a final judgment sentenced to make restitution to him, on that account, of the sum of $3650.

7. That in so doing A. L. Boyer knowingly and designedly perpetrated a fraud upon her, and occasioned her the damages claimed; same being the amount of the judgment against her, attorney fees, anxiety of mind, etc.

A variety of exceptions were preliminarily interposed in behalf of the different defendants, and some of them having been overruled, and others referred to the merits to stand as part of the answer, the answer was filed.

It is a general denial coupled with the following special defences, viz:

1. That the alleged sale of the 18th of May, 1878, to Bielkiewicz was duly advised by a family meeting duly convoked; and that he purchased from the latter in good faith for $1550, and never thereafter *conveyed or transferred* said land to plaintiff, *but expressed a willingness to convey same to her upon the condition that she would make restitution to him of said sum.*

2. That the plaintiff, as heir to her mother's estate, received said sum thus realized for said property and is thereby estopped from now asserting the nullity of the sale.

3. That it is not competent for plaintiff to claim said lands or any rights as owner thereof, without first paying or tendering to the defendant the price claimed and received by her.

4. That, in the event the court declares said sale to be a nullity, he pleads and claims, in reconvention, in the alternative, the sum of $1305.

5. That plaintiff, in suit No. 7794, having judicially averred and

declared that she had derived said land from him, such pleading estops her from averring that he never acquired it at all or that the damages she claims resulted from his having wrongfully pretended to sell property which he did not own.

The judgment of the District Court went in plaintiff's favor for $3200 and rejected the defendant's reconventional demand, and he has appealed. In this court the appellee made answer to the appeal and requested that the judgment be increased to $5000 as originally claimed in her petition.

As the parties litigant have been before this court in two preceding cases, a reference to them and the points decided therein will simplify the questions at issue in the present case.

In Boyer vs. Joffrion, 40 An. 957, the plaintiff claiming ownership of the land in question, by virtue of a duly recorded title from Volcy Amet, enjoined the foreclosure of the mortgage which was consented thereon in favor of Artigues and called plaintiff, Amet, his vendor in warranty. She in turn cited A. L. Boyer in warranty; but, on exceptions, the demands in warranty were dismissed and the case went to judgment upon the issues remaining in the case—the court deciding that the mortgage was inforceable because the public records disclosed title in the mortgagor at the date of the inscription of the mortgage on May 29, 1886.

The court held that, while it was true that A. L. Boyer was not a party to the controversy in which the validity of the adjudication of the property to Bielkiewicz was involved, the finding of the arbitrator annulling said adjudication, and the judgment of the court homologating same, were binding on him; that these occurred in 1883, prior to the conveyance to J. A. Boyer by Volcy Amet, which was duly recorded on the day of sale, more than two years antecedent to the execution and registry of the Artigues mortgage. Yet all of these occurrences did not, in any way, affect said mortgagee, because "the finding of the arbitrator, and the judgment annulling the adjudication, divesting A. L. Boyer of title to the property, had not been recorded previous to the granting of the mortgage."

But while thus holding, with respect to Artigues, and dissolving the injunction of J. A. Boyer, yet it conclusively appears that, in so far as Volcy Amet and A. L. Boyer were concerned, the annulment of said probate adjudication to Bielkicwicz, hisconveyance to A. L.

Boyer, and his retrocession of the property, were facts accomplished and completed, *inter sese*.

The property having been sent to sale under Artigues' mortgage, it was adjudicated to J. A. Boyer for the price of $1800 in cash. He, thereupon, instituted the suit of Boyer vs. Amet, 41 An. 721, for the recovery of the original price he had paid the defendant for the property, viz: $3200 and the costs and other expenses of the injunction suit, in reparation of the losses he had sustained in con-consequence of his eviction from the property.

In that case the court was called upon to review the entire litiga-tion, and in the course of their opinion they expressed the following views in reference to A. L. Boyer's claim of title and the arbitrator's award, viz:·

'' Now, it appears that the validity of A. L. Boyer's purchase of the tract of land in question had also been involved, and that as part of the adjustment of the differences. then existing between the parties, Boyer acknowledged the nullity of his purchase, and agreed to retrocede the property thus acquired by him to the heirs of the succession.

'' To that effect the act of submission contained the following dec-laration, or article, viz:

'' That A. L. Boyer returns to the said heirs the land   * . *   * bought by him in 1878, and that said sale to him is hereby annulled, reserving to said A. L. Boyer all the rights he had, or may have had, at the time of the sale of said land.''

Reference is made by the court to the fact, that by reason of the death of her brother and sister, Voley Amet became the sole heir to the estate of herr mother, Palmyra Boyer, and they then stated that ''the article in which A. L. Boyer acknowledged the nullity of his title was not a matter between himself and the suscession, or his administrator, but it grew out of an agreement between himself and the heirs directly, in a litigation instituted by the defendant himself * * * The retrocession, * * * was not to the succession, or (to) its representatives, but it was to the heirs themselves, who were themselves placed in possession without the intervention or assistance of the administrator.''

It thus appears that the parties to this litigation have been before this court in the cases cited, and in different capacities have either litigated or attempted to litigate all of the issues appertaining to

the land in question; and that the practical result of the litigation, as it existed when this suit was filed, on June 12, 1890, was, that the land of which the plaintiff was owner by inheritance, and of which the defendant, A. L. Boyer, had been apparently invested with the *indicia* of ownership, had been by him retroceded to her; it had been conveyed to J. A. Boyer by recorded title; the same had been mortgaged by A. L. Boyer to Jean Artigues, and by him sent to sale; and the evicted purchaser had obtained judgment against his vendor for the losses he had sustained in consequence of the eviction.

It further appears (this result having been ascertained), that there is but one question for solution, and that is, the consequences of A. L. Boyer's alleged illegal acts, and plaintiff's right of action against him for a recovery. It is from this standpoint that we must view the plaintiff's case, and the defendant's exceptions and defences; and it was for this reason that the argument of the exceptions was postponed. We will now take them up and dispose of them in their order.

I.

The first exception that occurs in the regular course of proceedings is that plaintiff had paid nothing on the judgment of J. A. Boyer against her, at the time of instituting this suit, and hence her action is premature. That fact is conceded by the plaintiff, but she denies the correctness of the defendant's conclusion therefrom.

The contention of defendant's counsel is that plaintiff's right of recovery could arise only from the fact of her having made payment, and not from a simple judicial condemnation *to* make payment. That her right, if any exists, is to be indemnified for *actual* loss suffered, and that she has no right of action for future damage.

This is a mistaken premise from which to view the plaintiff's case.

This is a suit against A. L. Boyer for damages inflicted upon the plaintiff by his "illegal, wrongful and tortious acts," in perpetrating a fraud upon her, in the manner and under the circumstances detailed in her petition, and recited above.

It is nowhere alleged, and it nowhere appears in the record, that there were any contractual relations between A. L. Boyer and J. A. Boyer in respect to the land in question.

It was, primarily, property of the succession of Palmyra Amet, mother of plaintiff, and was adjudicated to Bielkiewicz, and by him conveyed to A. L. Boyer, who was at the time both administrator of

Palmyra Amet's succession and tutor of plaintiff. In an arbitration and settlement between A. L. Boyer and the plaintiff, the former acknowledged the nullity of his alleged purchase, and consented to and did make a retrocession of the property to the heirs of Palmyra Amet, and they went into possession. Thereafter Volcy Amet, as sole heir, conveyed to J. A. Boyer; and subsequently A. L. Boyer executed a mortgage thereon in favor of Artigues, which sent it to sale. The seizure and sale thereof were unsuccessfully resisted on the part of J. A. Boyer, and, upon his injunction being dissolved, he sued the plaintiff and recovered a judgment as stated. From this statement it is clear that plaintiff's demand for damages is not an incident of the sale she made to J. A. Boyer, but the result of the illegal acts of A. L. Boyer, in enabling Artigues to divest J. A. Boyer's title, and to evict him of the property. That the judgment of the court fixing definitely the amount of J. A. Boyer's loss, on that account, and adjudging her to pay the same, can be referred to in this case for the sole purpose of determining the *quantum* of damages, *quoad* this item. Whether plaintiff has made payment or not is matter of no consequence, so far as A. L. Boyer is concerned. The plaintiff's vendee was evicted from the land, through the instrumentality of a mortgage he consented on the property, and, on that account, judgment was entered up against her. These are the only facts with which A. L. Boyer is concerned. This is made evident—if the proposition were not self-evident on its face—from the fact that plaintiff made an effort to have A. L. Boyer respond in warranty in the two suits above referred to, but same proved unavailing. He was not liable in warranty, for the simple reason that he was not a vendor of plaintiff—he having merely retroceded to her a title of which she had been illegally dispossessed.

This exception was properly overruled.

## II.

J. A. Boyer and Henry Bielkiewicz excepted that the petition stated no cause of action as to them. There is no prayer for judgment against them. They were merely joined as nominal, though necessary, defendants, and were in all likelihood cited for the sole purpose of assisting the plaintiff in obtaining the relief she prayed for against A. L. Boyer, principal defendant—they having been

recipients of titles to property of Palmyra Amet's succession, intermediately, but being at present without interest therein.

This exception was correctly overruled.

### III.

In the next place, the defendant filed pleas of *res adjudicata* and no cause of action, and same were, over his objection and exception, referred to the merits, to stand as part of the answer, but on final trial both pleas were overruled by the judge *a quo*.

We are of opinion—and have so ruled frequently and recently— that these pleas should have been tried and disposed of by the District Judge *in limine*, and he erred in declining to do so. And, proceeding to deal therewith as he should have done, we will invert the order of defendant's counsel's argument and discuss the plea of *no cause of action* first.

We are clearly of the opinion that a cause of action is stated in view of the facts which are recited in the beginning of this opinion, but to put the matter beyond question we make the following quotations from plaintiff's petition—the ground on which counsel seek to sustain their exception being that the probate sale of the land in question was, at most, only relatively null, and A. L. Boyer's retrocession thereof was only a promise of sale—viz: " Petitioner represents that there were no debts against said minors which called for a sale of their property and that said order was improvidently granted by the court and fraudulently obtained by the tutors. The said property was sold on the 18th of May, 1879, and apparently adjudicated to Henry Bielkiewicz, who immediately thereafter, on the same day, transferred said property to Alonzo L. Boyer, tutor of Laura Amet, and one of the auctioneers who made the sale.

" Petitioner represents that said Bielkiewicz was not a purchaser in good faith, but was an interposed person acting for and in behalf of Alonzo L. Boyer, tutor.   *   *   *   The said sale was illegal, null and void, for the reason that the tutors themselves became the purchasers of all the property, etc.,   *   *   and said sale was simulated and a fraud perpetrated upon the minors by their tutors.

" For the reasons above set forth petitioner represents that the heirs of Palmyra Boyer were never divested of their title to the land above described, that Alonzo L. Boyer never acquired a title thereto,

and that as between him and the heirs of Palmyra Boyer the owner-ship of said land remained in them."

Subsequent litigation and the submission thereof to an arbitration is then recited and petitioner then concludes thus:

"But, one of the points of this agreement, which was fully set-tled and determined by the arbitrators and by the parties themselves, was that the sale by which Alonzo L. Boyer had acquired a paper title to the land, which belonged to the succession of Palmyra Boyer, described above, was a nullity and that * * (same) be-longed to the succession of Palmyra Boyer."

On full proof of these averments being made, it is manifest that the act of A. L. Boyer, in placing a mortgage on the property, as stated, was a fraud on the plaintiff's rights, and done with full knowledge on his part. It is manifest that he did not occupy the position of a possessor of a title which was only relatively null, and for the revocation of which an additional decree was necessary, in order that plaintiff could reach him, and make him respond for the consequence of his illegal act.

On the averments of plaintiff's petition, the defendant never had any title to the land, and he occupies the position of one who mort-gaged a piece of property he never owned. It is of no consequence to the defendant that plaintiff's title had not been recorded. He knew that the property was hers, and that he had no right to put an incumbrance upon it. That plaintiff did not record her title, so that the divestiture of defendant's title might have appeared, was neg-lect may be conceded; but it in no wise contributed to the act of the defendant. It is likewise of no consequence that it is alleged—and also a fact—that at the time of the registry of defendant's mortgage, the plaintiff had parted with title. The property in the possession of her vendee was affected by it. He was evicted thereby, and has obtained judgment against her, in consequence thereof. All of these facts are alleged, and such allegations state a cause of action.

IV.

We will next consider the defendant's plea of *res adjudicata*, which is based upon a ruling of the District Judge in sustaining an excep-tion of no cause of action, which was tendered by A. L. Boyer as defendant cited in warranty in the suit of Boyer vs. Amet, 41 An. 721. It appears that in that suit—the one in which judgment was ren-

Amet vs. Boyer et als.

dered against the plaintiff—Volcy Amet set out in her answer a full and detailed statement of the facts, as given in substance by the court, and called A. L. Boyer in warranty to defend the suit, and respond to such judgment as might be rendered against her therein. To this call in warranty A. L. Boyer excepted that the defendant, Volcy Amet, was not entitled to call him in warranty in the aforesaid action, and in this respect her answer disclosed no cause of action.

On these exceptions the District Judge ruled as follows:

" This cause coming on to be heard upon exception of no cause of action filed on behalf of A. L. Boyer, called in warranty in answer of defendant, Volcy Amet, filed in the above numbered and entitled cause, and the law and the evidence being in favor of said exception, it is by reason of all the foregoing ordered, adjudged and decreed that there be judgment upon said exception in favor of the said A. L. Boyer, called in warranty, as aforesaid, dismissing the said call in warranty, and against the said Volcy Amet, wife of Tobie Lougarre, with costs, reserving to said Volcy Amet, defendant, any right of action she may have against the said A. L. Boyer."

To sustain the plea of *res adjudicata* on the ruling above quoted, the defendant must make it appear affirmatively and clearly that the cause of action is the same in both cases.

For the code provides that:

" The authority of the thing adjudged takes place only with respect to what was the object of the judgment. The thing demanded must be the same; the demand must be founded on the same cause of action; the demand must be between the same parties and formed by them against each other in the same capacity." R. C. C. 2286.

This simple precept of the code has been repeatedly defined and interpreted, without much force or perspicuity being given to it. Morton vs. Packwood, 3 An. 174; Patterson vs. Bonner, 14 La. 233; Johnson vs. Webb, 8 An. 126; Shaffer vs. Scuddy, 14 An. 582; Florence vs. Wilcox, 14 La. 58; Association vs. Mason, 23 An. 619; Trescott vs. Lewis, 12 An. 198.

But the distinction between the cause of action set out in the answer referred to and the one set out in the plaintiff's petition is so clear and well defined as to require no extended argument. The call in warranty was predicated upon a suit against the *defendant*,

Volcy Amet, on a breach of her contract of warranty .in an act of sale, while the suit of the *plaintiff*, Volcy Amet, is one sounding in damages *ex delicto*.   The very reason that the exception in that suit *prevailed* is the one why the one tendered in this case should not. The fact that the judge, in sustaining the exception of A. L. Boyer in that suit, fully reserved the rights of Volcy Amet, would indicate that this was the view he entertained of it.

In order to constitute a decree of court *res judicata*, three things must concur, in respect to the object of the suit, or the cause of action, viz:  (1) The thing demanded must be the same; (2) the demand must be founded on the same cause of action;  (3) the demand must be formed by the parties "*against each other in the same capacity.*"   •

In the suit of Boyer vs. Amet, the demand to which the defendant Amet sought, by her answer, to make A. L. Boyer a party, was not a demand made against him in the *same capacity* as that to which he is made a party in this suit.   This is evident.   Hence the plea must fail the defendant, because it is wanting in its most vital and essential element—that is, sameness of capacity of the litigants.

## V.

The next exception is a plea of the · prescription of one year against this suit as an action for damages *ex delicto*.   From what has been already premised in the way of statement and argument it must be apparent that we have viewed it, and now view it, as an action *ex delicto*.   We think that the quotations from the petition already made clearly define it to be such an action.   The cause of action is distinctly founded upon the faults, the illegal acts and alleged wrong-doings of A. L. Boyer.   These are the essential *indices* of an action *ex delicto*.   City of New Orleans vs. Bank, 31 An. 566; Knoof vs. Blaffer, 39 An. 28.   ·

The only question for determination in order to decide whether the plea is good, is one of fact, and that is at what *time* was the injury inflicted of which the plaintiff complains.   This suit was filed on the 12th of June, 1890, and if the injury ·was inflicted within one year prior to that date her action was timely.

Judgment was rendered against the plaintiff by this court in July, 1889, sentencing her to pay the sums of $3200 and $227.50 to J. A. Boyer, as her evicted vendee.   These two are the principal items in

her claim of $5000 damages against the defendant, A. L. Boyer, as the losses that his previous illegal acts have occasioned her.

The initial point from which to compute plaintiff's damage in our opinion is the date of that judgment.

True it is that the mortgage which A. L. Boyer granted on this land was executed and recorded in May, 1886, and that was the *act* of his which primarily initiated the loss of the plaintiff. It is true that registry operates notice to all third persons of an encumbrance on real property, but the import of that legal principle is that all persons dealing with the realty thereby affected are put upon their guard, and any rights they may thereon *subsequently* acquire are affected thereby.

But the record discloses that the plaintiff had disposed of the land in question to J. A. Boyer, and his title had been duly recorded six months antecedent to the registry of Artigues' mortgage. Plaintiff having parted with her title was not required to make any further examination of the record. She had no interest to subserve by so doing, and the registry of Artigues' mortgage was no notice to her. True it is that she was cited as co-warrantor in the suit of Boyer vs. Joffrion, but she in turn cited A. L. Boyer. And on Artigues' exception both were dismissed. It is also true that the plaintiff was again cited into court in Boyer vs. Amet, but she in turn cited A. L. Boyer, and on his exception he was discharged. If effect be given to the judicial notices furnished the plaintiff by those suits of her vendor's eviction, and of the *possible* loss the same might cause her, it also shows that she did all in her power to bring the matter to the notice of the defendant, and if reparation had been therein attainable for her he is responsible for her failure to secure it.

If such a citation does not constitute, in strictness of law, a legal interruption of prescription, in the sense of R. C. C. 3513, it does constitute an equitable estoppel against the defendant.

But we need not go to the extent of deciding either, as we think other grounds control the question fully, and clearly demonstrate that plaintiff possessed no actionable right for the recovery of damages *ex delicto*, against the defendant, until final judgment had been rendered against her.

In confirmation of this proposition—if confirmation were needed—it is only necessary to refer to the defendant's exception of prematurity of action, which is predicated on the ground that the plaintiff

had no right of action until she had paid the judgment of J. A. Boyer. In answer to that proposition we said that plaintiff's right of action arose as soon as that judgment liquidated the *amount* of the loss he had sustained in consequence of eviction.

Now while it is true that those exceptions were propounded in the alternative and the rejection of one can not be urged as a plea of *res judicata* or estoppel against the other; yet our finding the date of the judgment to be the time her cause of action arose, is a reason why we should reject defendant's plea of prescription. The plea is not good.

## VI.

Various other exceptions and pleas were urged in the court below, but as they are not argued in brief, we will pass them by.

## VII.

### ON THE MERITS.

The main question discussed in the brief of appellant's counsel is "that defendant's title of May 18, 1878, was valid," etc., and in verification of that statement he cites the fact that plaintiff received and was the beneficiary of the price of $1305 Bielkicwicz paid at public sale for the property, which was only relatively null.

Counsel then employs this expression, viz:

"The expression of 'return of said land to the heirs' is equally ineffective, for in addition to the want of description and identification, it must not be lost sight of that this expression was always qualified by a reservation of defendant's right to a return of money, showing conclusively that nothing was ever intended by him but an unexecuted agreement to convey land upon the performance of something by the intended grantees. This is enforced by the communications of S. R. Thorpe, Esq., and Hon. Aristides Barbin, offered in evidence by the defendant and excluded on objection, but attached to the bill of exception found at page 171 of the transcript." Brief, p. 40.

This reference is made to the arbitrator's award and its effect upon his title. By this means he seeks to meet and defeat plaintiff's charge of simulation, and lay the foundation for his claim in reconvention. In other words, as stated in answer to defendant's plea of no cause of action, the substance of his claim is that his title is to be

37*

viewed as one that is relatively null, and his consent to the arbitration proceedings as *tantamount* to a *promise of sale*, the execution of which can only be enforced by a suit for a specific performance.

We have decided otherwise. Boyer vs. Joffrion, 40 An. 657; Boyer vs. Amet, 41 An. 721.

But, as those decisions do not bind the defendant, A. L. Boyer, who was no party to them, we will treat the question as *res nova* and discuss it again. For this purpose we may briefly summarize the following facts, as they appear of record, viz:

In 1881 the parties to this litigation entered into an agreement to compromise their differences. It is premised by the statement that, in order to dispose of all differences and disagreements between the undersigned heirs of the succession of Palmyra Boyer and Eugene Amet, growing out of the settlement of said succession, and the administrators and tutors of said heirs, and in order to finally settle said succession without litigation, the parties hereby agree (1) that. A. L. Boyer returns to said heirs the thirty-seven and one-half acres of land bought by him in 1878, and that said sale to him is hereby annulled, reserving (to him) all rights he had, or may have had, at the time of the sale of said land."

2. It is further stated "that the within submission shall have the force and effect of a transaction or compromise entered into for the purpose of avoiding litigation." This agreement was carried into effect by the award of the arbitrator.

The following facts are thereby established, viz: (1) that A. L. Boyer *returned* the land to the heirs; (2) that the sale to him was *thereby annulled*; (3) that "all *rights* he had at the time of the sale of the land" are reserved to him.

This is clearly equivalent to a retrocession of the land to the plaintiff as sole heir of the succession of Palmyra Boyer. A retrocession means the restitution of an ancient title to a true owner. Such an act confers no new title; it merely recognizes and confirms a previously existing title in another. R. C. C. 2272, *et seq.*, Payne vs. Nowell, 41 An. 852.

The title is thereby necessarily recognized as having been in the succession of Palmyra Boyer, and from it transmitted to plaintiff as heir. The effect of that arbitration was such as to exclude all countervailing proof, and its recitals are the final and conclusive evidence of what the submission was, and no other proof is admissible against

it, or in explanation of it.   Lampkins vs. Railroad Co. 42 An. 997; Colhoun vs. Lane, 39 An. 594.

The arbitration and compromise in this case was for the object of *preventing* litigation, and not to put an *end* to a lawsuit.   R. C. C. 3071.

The measure of damages which plaintiff has suffered is the amount she has been adjudged to pay her vendee on account of the loss she has suffered by eviction under the mortgage of Artigues and such additional sums as she may be able to prove.   The reputed price paid by Bielkewicz at probate sale, $1305, or that for which the latter ostensibly assumed to sell to the defendant, are not controlling.   In the arbitration proceedings nothing was said or proved on that score. Nothing was decided by the arbitration either.   In this case, in which the alleged fraudulent simulation of the latter's title is laid as a foundation stone, none of the parties take the stand as witnesses, and no parol proof is adduced on the subject.   We are of the opinion that the compromise and arbitration are sufficient to support plaintiff's charge and ancient, primordial title, and she is consequently entitled to the affirmance of the judgment in her favor, but the evidence does not justify an increase of the amount allowed.   The defendant's reconventional demand must be considered as having been rejected as of non-suit for want of *any* proof to sustain it.

On the whole our conclusion is that the proof in the record abundantly warrants the affirmance of the judgment as rendered.

Judgment affirmed.

### On Application for Rehearing.

(a) The first ground assigned in defendant's application is, that the title he derived through Bielkiewicz, from the succession of Palmyra Amet, was not a simulation, for the reason that he actually and really paid therefor $1305, which the plaintiff received and still retains, and as the counterpart of that statement counsel refers to the evidence of the defendant and Bielkiewicz on that subject in support of the defendant's reconventional demand for that sum.

On page 13 of defendant's original brief we find this statement, viz:

" At the trial the only evidence offered by plaintiff to sustain the charges of fraud in the judicial sale of May 18, 1878, was the testimony of M. M. Dufour, given against objection.   His statement con-

flicted with the *proces verbal* and the testimony of Bielkiewicz and
A. L. Boyer. The remainder of the plaintiff's case was made up of
documents heretofore recited and of specific offers of the judgment,
writ of execution and return thereon in suit No. 7951, being Jacques
A. Boyer vs. Volcy Amet. These do not show that a dollar was ever
paid upon that judgment, nor is there any other evidence in this
record which shows that this plaintiff has ever made any payment
upon it.

"On the part of defendant the following evidence was offered:
Petition and order for family meeting to advise as to sale of property
of Amet minors; *proces verbal* of family meeting, homologation
thereof and order of sale; Appraisement of the property, that of
the land being $1305; account of J. A. Boyer, tutor of Volcy and
Albert Amet; account of A. L. Boyer, tutor of Laura Amet; answer
and call in warranty in suit No. 7794, being J. A. Boyer vs. Artigues
and the Sheriff; citation to A. L. Boyer and return in said suit; cer-
tificate of date of filing of mandate of the Supreme Court in said
suit."

Relying upon this summary by defendant's counsel, the testimony
to which our attention has been for the first time attracted, in the
present application, escaped notice in our original investigation and
report.

But, in our opinion, this testimony does not improve the defend-
ant's case.

The substance of it is as follows, viz:

1. That M. M. Dufour attended the public sale and bid in the prop-
erty at the request of the defendant, who furnished him some money
for that purpose.

2. That, instead of taking title in his own name, he (Dufour)
transferred his bid to Bielkiewicz, at the latter's suggestion, and
turned over to him the money he had received from the defendant,
to whom Bielkiewicz was to transfer the property.

3. A. L. Boyer says that "at a former sale (he) was author-
ized to buy in (the property) *for the heirs*, and he thought (he) was
taking the same position in this instance; that he must have given
Mr. Dufour, for that purpose, $700 or $800." But, notwithstanding
this statement, he subsequently said, and in the same connection,
that "he bought the property from Bielkiewicz, and paid him for

it the amount mentioned in the sale from him to (witness)," *i. e.*, $1560.

4. Bielkiewicz says Dufour bid in the property, and that afterward he called his (Dufour's) attention to the fact that there were judgments against him, and said (to him) " you had better give me your bid;" and he consented and turned over to him (witness) the money the defendant had furnished him, and paid the amount of his bid, $1305, to J. A. Boyer, tutor, he (Bielkiewicz) *furnishing the difference;* and on the same day conveyed the property to the defendant for $1560. And, in the same connection, he said, "After the (act of) sale was passed I returned him (defendant) the *same money* I took from Dufour."

There is an irreconcilable conflict between these statements; and taken altogether, it is utterly impossible to say who paid for the property, or what was paid for it, or with whose money the price was paid. And to further confuse the matter, J. A. Boyer, tutor and administrator, when interrogated fails to state that he received the money for the property sold.

But even conceding that the money was paid, the defendant does not insist that he acquired the title. And in so far as the restitution of the sum expended is concerned, the defendant's mortgage in favor of Artigues sent the property to sale, and it realized over $1900, and this sum inured to his benefit and overpaid him and nothing is due.

(b) The date from which the twelve months' prescription begins to run is correctly stated as that of the final decree of this court in July, 1889. The judgment of the District Court, it is true, was affirmed on appeal, but during the pendency of the defendant's suspensive appeal its effect was held in suspense and it was not exigible. Had the defendant instituted suit after her appeal had been taken, it would have been considered as an abandonment of it and possibly defeated her just demands against the defendant altogether.

On other grounds nothing further need be said.

With reference to the application of the plaintiff and appellee for a rehearing for the purpose of urging her demand for an increase of judgment in her favor, it need only be said that our decree simply affirms the judgment of the District Court, and its decree was deliberately and carefully rendered. There is no appearance of it having been the result of accident or oversight. In the court below there was no suggestion of the kind made by plaintiff's counsel.

There was no motion made for a new trial and plaintiff did not appeal. In this court no error apparent in the record is suggested on which we could act in making the desired change. The decree of the judge a quo is not to be lightly considered or changed for other than substantial considerations and when injury has been sustained.

Rehearing refused.