## BARKER *v.* YORK et al.

A ship-owner cannot be made liable for any contract or expenditure made by the captain in a foreign port, unless for some object necessary under a fair view of his interests.

Where, on an attempt by one representing himself as an agent for a ship owner and by the consul of the nation to which the vessel belongs, to remove a master from the command of his vessel, the latter employs counsel to maintain his right to the command, the owner, if his interests are shown to have been in conflict with the course pursued by the master, cannot be made liable for the fees of counsel employed by him. *Per Curiam :* Where counsel sue for fees for professional services, their claim must rest upon the conscientious and exclusive application of those services to the business and interests of those who are called upon to pay them.

APPEAL from the Fifth District Court of New Orleans, *Buchanan*, J.   H. A. *Bullard*, for the appellant.   *Barker* also appeared *pro se.   Winthrop*, for the defendants.   The judgment of the court was pronounced by

EUSTIS, C. J.   This case was before this court during the last year on a question of jurisdiction, and was remanded for further proceedings, the issue between the parties being simply one of indebtedness.   An answer was filed by *Thomas H. Holderness ;* the case was submitted to a jury, who found a verdict for the defendant, *Holderness*, and the plaintiff has appealed.

The plaintiff in his petition alleges, that *William Broder York*, master of the british barque Aldebaran, together with the owners of said barque, are indebted to the petitioner *in solido*, in the sum of one thousand dollars, for services rendered and expenses paid, he having been employed by the said York, as commander of said barque, the said York being duly authorized to engage such services in behalf of the owner of said vessel to defend and sustain said York in the command of the said vessel against all unlawful interruptions in the prosecution of the voyage in which she was engaged, also in reclaiming the chronometer which had been used for the safe navigation of the said barque, and in claiming damages for such seizure, and in defending said York against all illegal and unwarrantable complaint which had been made against him, the said York

apparently for interrupting his command; that the said amount has been amicably demanded, but still remains due and unpaid. The prayer of the petition was for judgment *in solido* against the parties, and for general relief.

When this case was first before us, we considered the plaintiff's allegations as amounting to no more than a claim for an ordinary debt against the defendants, and as there was nothing before us but a plea to the jurisdiction, and not being able to distinguish this claim from any other ordinary suit for a sum of money, we overruled the plea to the jurisdiction of the court, and remanded the case. The defendant *Thomas H. Holderness* then pleaded that he was the sole owner of the Aldebaran; he denied the allegations of the plaintiff's petition, and charges that so far from the said plaintiff ever having been engaged by him as counsel, he the said plaintiff has been constantly engaged in endeavoring to annoy and harrass him, the respondent, impeding the movement of the said barque, disturbing the good order and discipline thereof, thereby causing great loss and injury to the respondent, subjecting him to heavy expenses, to an amount of at least one thousand dollars, for which he prays judgment in reconvention against the plaintiff. *York* confessed judgment for the amount claimed, and the case is before us under these pleadings, the evidence, and the verdict of the jury.

The sole question to be considered by this court is, whether, under the evidence, the defendant *Holderness* is indebted to the plaintiff as alleged in the petition. Although the plaintiff has not thought it material to allege in his petition his professional capacity in which his services were required, we shall consider the action as one instituted by an attorney and counsellor at law for his fee or compensation.

The plaintiff was never employed by *Holderness*, but was employed by Capt. *York*, against whom he has judgment by confession, on the original petition filed against him and the owner of the Aldebaran. The relations of counsel and client between the plaintiff and *York*, only become important as fixing an obligation to pay money on the defendant, which is now the subject of consideration. The plaintiff insists that, under the circumstances in which *York* found himself, he was authorized to employ counsel, and that the owner was bound by his acts, as, for the purpose of protecting the property in his charge and the furtherance of the voyage, the captain may be considered as the general agent of the owner, and has authority to bind him for all necessary expenditures.

In March, 1845, the british barque Aldebaran arrived in this port, under the command of Capt. *York*. For certain causes, which to that officer were deemed sufficient, the british consul removed him from the command of the vessel. His name was stricken from the register, which was in the custody of the consul, and that of *Scott*, the chief mate, was placed temporarily in command, and substituted in his place. The consul acted with the concurrence of *R. H. Chilton*, who claimed to be the agent of the owner. The authority of both was denied by *York*, and a litigation and contest ensued, of which we shall only notice such portions as are deemed material to the subject of our enquiry.

The answer of the defendant *Holderness* raises, however, a previous question, and that is as to the application or direction of the services rendered by the plaintiff.

It must be admitted that the situation of Capt. *York*, on the attempt to remove him from the command of the Aldebaran, was one of great responsibility

BARKER
v.
YORK.

and embarrassment, and which required the assistance and advice of the best counsel; and whether the owner would or not be responsible for the fees, is a very different question from that before us. The defendant in this case has approved of what has been done by the british consul and *Chilton*, and has disapproved of the conduct of *York*, and of the counsel and acts of the plaintiff, and as far as he can, has negatived the allegation that, what was done by the latter was in the interests, and for the benefit, of the owner. The british government has also expressed its opinion that the conduct of its officer was entirely justified by the circumstances, and accordingly approved of it. The defendant under date of the 16th May, 1845, ratified the doings of *Chilton*, and gave him a full power of attorney, the effect of which it is contended was to make the previous acts of *Chilton* as valid as if done under a formal and sufficient authority.

It is urged by the plaintiff that these subsequent acts do not affect his rights, as acquired under a different state of things, in reference to which he was called upon to act in giving his professional assistance. But the question then arises, in whose interest did the plaintiff act? Did he act in the interest of the defendant, or in that of *York?* Were those interests identical, or at variance with each other? Who was really the client, *York*, or the owner of the Aldebaran? We are not aware that a ship-owner can ever be rendered liable for any contract or expenditure in a foreign port, unless for some object which is necessary under a fair view of his interests.

The learned counsel for the plaintiff, at the close of his written argument, has thus stated the propositions which his view of the case established. 1st. That the plaintiff was employed by Capt. *York*, while he was acting as the special agent of *Holderness*, and for the purpose of maintaining his rights, and that *York* was acting within the scope of his authority. 2d. That the act of the consul was a nullity, and that even when ratified afterwards, the ratification could have no retroactive effect upon the contract already entered into between *York* and the plaintiff, before the power was revoked and he was notified of the revocation. 3d. That the court erred in charging the jury that the decision of the british ministry in relation to the official conduct of the consul is conclusive upon the plaintiff, and in refusing to admit evidence that *York* offerred to surrender the barque on the production of authority from the owner. 4th. That the court erred in charging the jury that they should presume the legality of the proceedings of the british consul at this port, in deciding between the master of the british vessel and a person pretending to be the agent of the owner, as to the right to control said vessel. 5th. That the court erred in further charging the jury as set forth in the sixth head of the charge. And the counsel thus concludes : " If the court should agree with us, that the court below erred, we venture to express a hope that they will put an end to this controversy, by awarding to the plaintiff what the record shows to have been the value of his services, without sending us back before the same court to litigate our rights."

Not being able to concur with the learned judge from whose decision this appeal is taken, in his charge to the jury in relation to the proceedings of the consul, the questions raised in it being of grave moment and not necassary to be determined under the view we have taken of this case, it is not material that we should give our views in relation to them ; and, under the request of the plaintiff, we shall not remand this cause, but proceed to consider the claims of the plaintiff as they appear by the record.

The suit in the District Court of the United States, in which the profession-

al services of the plaintiff are alleged to have been rendered, was instituted by libel in the name of *Holderness*, the defendant, for the recovery of the possession of the barque, which, it was alleged, was wrongfully withheld by *York*, from the agent of the owner. *Chilton*, under color of his authority as captain, though he had been superseded and deprived of his command for violent, improper, and illegal conduct, by the agent, and the british consul acting in his official capacity. On a rule taken on *York* to show cause why the barque should not be delivered up to *Chilton*, the judge of the admiralty court discharged the rule, and the libel was discontinued. The barque had been seized under admiralty process; and, pending these proceedings, she was cleared at the custom house, and under the command of Capt. *Turner*, appointed by the british consul, went to sea. The excuse given for this proceeding was to be considered by the judge of the admiralty whose process it was contended was abused. The means adopted it is urged were necessary to save the owner from the consequences of the detention of the vessel to await the result of a suit in admiralty, and were taken in his best interests, and for the furtherance and completion of the voyage for which the vessel was loaded at the time.

The judge of the admiralty court, in giving his reasons for discharging the rule, adverted to the question of jurisdiction, though not raised by the pleadings or in the argument, and enforced with great clearness the rule on which courts of admiralty in this country and in England, we believe, almost uniformly act, referring the disputes of foreigners relating to foreign vessels to their own tribunals for adjudication, and never interfering except in cases of necessity. The learned judge considered that the consent of both parties was given to the jurisdiction, and that, in such a case, he might with propriety decide as to the party entitled to the possession of the barque, but discharged the rule in the absence of the necessary evidence to establish the alleged ownership and agency.

The answer of *York* to the libel, contains among other matters, this sentence, after alleging in the preceding sentence that he refuses to surrender the vessel until she returns to Hull: " When a claim on him was first made, he was willing to do so, to any person duly authorized to represent the owner, ( waiving his legal rights,) for which purpose he demanded to see the credentials of the person pretending to be authorized ; this being denied him, and a most relentless war commenced, and which continues to be carried on by *Richard Harrison Chilton*, the pretended agent, this respondent now puts himself on his legal rights, and insists that so long as he continues to prosecute the voyage agreeably to his instructions there is no power competent to remove him from his command until the voyage has terminated."

Another suit in which the plaintiff claims compensation for professional services is that of the *State* v. *York*, a prosecution by *Chilton* for an intended breach of the peace on the part of *York*, in interfering with, and intruding himself, and making a disturbance, on board the Aldebaran, &c., which was examined into before the recorder of the Third Municipality, and dismissed. *York* at the commencement had been arrested and imprisoned, and on his release the services of the plaintiff were engaged to assist Capt. *York* professionally, in the difficulties in which he was involved in relation to the barque Aldebaran. The services in those suits form the grounds of the plaintiff's claim.

We take it for granted that, when counsel sue for professional services, their

BARKER
*v.*
YORK.

claim must rest upon the conscientious and exclusive application of those services to the business and interests of those who are called upon to pay them; with such an application, the extension of their services to any antagonist interest is incompatible, and we cannot recognise the position of counsel thus placed as constituting any basis for compensation. The relations of counsel and client are too sacred, too confidential, too important to be endangered by the presence of any adverse interest. The plaintiff was employed by *York,* who is bound to pay him. In the relentless war carried on against him by *Chilton, York* threw himself upon his legal rights. His interests, to say nothing of his passions, required that, he should be reinstated or maintained in the command of the barque. But the defendant's interests? In respect to them, we only feel ourselves called upon to say that, they were not identical with those which were avowedly maintained on behalf of *York*; indeed, under a full view of the critical and embarrassing circumstances with which those interests were surrounded, we consider them to have been in conflict with the course which *York* felt himself at liberty to adopt for the. protection of what he considered to be his legal rights.

For the services for which the defendant is sought to be made liable, the plaintiff has a judgment against *York,* rendered by his consent on confession. It has not been seriously urged that the claim against both ought to be for the same amount. Such a proposition would not be reasonable. And if there were any distinct services rendered in the interest of *Holderness* we have no evidence before us on which we could give the plaintiff a compensation for them. The *only* evidence in which any value is given to the professional services of the plaintiff, is that of a gentleman of the bar who states that, from a mere glance at the records shown him, from the time consumed and the matter being much contested, he should say that a fee of one thousand dollars would not be extravagant.

In conclusion, we can see no ground for the claim for professional services of the plaintiff as an attorney and counsellor at law against the owner.

*Judgment affirmed.*