BREAUX, C. J.
The late Simon Witkowski and wife, intestate, left six children, to wit, the three petitioners in this ease and Adolph Witkowski, L. L. Witkowski, and Fred Witkowski.
The last named is an interdict, represented by Robert Nicholson, curator.
L. L. and Adolph Witkowski, with C. F. Davis, are the parties defendants.
The curator of the interdict was made a party to the suit.
Ex-Judge Kennedy, in whose hands the notes in controversy were put in escrow, was also made a party.
He has no interest or concern in the suit save as trustee holding the notes for the parties in interest.
It appears that Simon Witkowski left considerable estate in lands.
His children and his son-in-law, James S. Semple, held different tracts of these lands in their respective names.
These heirs attempted, with legal advice, to settle their rights among themselves. Disagreement arose among them.
After a time they arrived at a compromise, which they signed in 1906.
The curator of the interdict, advised by a family meeting, duly homologated, gave his consent to the compromise.
At that time one of the defendants, - Mr. C. F. Davis, who had been the attorney of the late Simon Witkowski, continued for some .time at least as the attorney of the plaintiffs.
In the compromise just stated, it was stipulated that should any sum of money or land be recovered from H. & C. Newman, Limited, by any of the parties to the compromise, the amount was to be divided equally among the parties to the compromise.
Simon Witkowski owned many thousand acres of land, which were inscribed in the conveyance office, as before mentioned, in the name of his children.
The different tracts in East Carroll parish were sold at tax sale and bought by H. & C. Newman some 10 years before his death.
Suit was brought against the purchasers at tax sale, the Newmans, and, while pending *689 in court, it is charged: That at a particular time, when there was good prospect for a compromise by plaintiffs, well known to the defendants, who were in conference with the Newman people, but not known to the plaintiffs, the defendants were urgent for plaintiffs to agree to a compromise of the suit on terms favorable to the defendants, but not favorable to the plaintiffs, in this: That the defendants were having a larger portion of the amount for the property than the plaintiffs. That defendants purposely kept these facts in the background in order to advantage themselves, to the detriment of plaintiffs.
After the plaintiffs had agreed to accept each $2,000 and the defendants had agreed also to receive a similar amount (plaintiffs charge as a mere blind, as they were to receive a much larger amount), the suit was compromised by paying $18,000 to the firm of Newman & Co. They, Newman & Co., in consideration of this amount, abandoned any further claim to the lands.
That about this time C. F. Davis, L. L. Witkowski, and Adolph Witkowski, with Frank Janes as vendee, negotiated a sale of these lands.
Plaintiffs charge that, induced by the false and fraudulent acts and representations of these defendants, C. F. Davis, L. L. Witkowski, and Adolph Witkowski, they were led into error and signed a quitclaim deed to the land recovered from the Newman firm.
That this quitclaim deed in favor of Frank Janes was signed by all parties for the sum of $2,000 each, making for all the heirs $12,-000, and $18,000 before mentioned to the Newman firm.
A short time after the compromise, plaintiffs allege that they discovered that defendants had combined together and sold the property for $65,000, instead of $30,000, which they had been led to believe was the amount. Five thousand dollars were paid in cash, and the $30,000 in notes, which are deposited in escrow, plus the $30,000 which they received, as before mentioned, making the $65,000.
The defendants severed in their defense. They all in substance deny the averments reflecting upon their conduct, and plead that their acts were open and above board.
They allege that they offered the agreement of compromise in evidence; that they are bound by its terms as it was offered without restriction.
The defendant Davis admits that he signed . the compromise in question, and avers that the notes amounting to $30,000 in face value, secured by mortgage, were involved in the suit of L. L. Witkowski v. H. & C. Newman.
These are the notes referred to as placed in the hands of Judge Kennedy as in escrow.
The defendant further avers that those notes were delivered to him in accordance with the agreement entered into with Frank Janes, the purchaser.
He further states: That the amount of
the fee was 50 per cent, to recover the lands from Newman & Co., which had been bought by them at tax sale for taxes due by L. L. Witkowski. That he dealt with L. L. Witkowski, with whom he had a right to deal, as he looked upon Witkowski as the owner of the land. That, under the terms of the agreement with Witkowski, he was to receive one-half of all lands recovered and 50 per cent, for all money recovered. That he filed suit for these lands which was met by the plea of prescription. That, in addition, a large claim was held by the Newmans against L. L. Witkowski. That many difficulties arose in the management of this litigation. That it required some skill and attention and finally resulted in a compromise, as before stated.
That at the instance of Adolph Witkowski, the other defendant, Frank Janes was finally-induced to buy the land.
There are other allegations of defendants relating to the sale made to Janes and in regard to the suit.
*691 Defendant refers to other harassing suits brought by plaintiffs against himself and L. L. and Adolph Witkowski; that they were brought without good cause and decided in their favor; that there was no agreement possible by plaintiffs with the defendants prior or since this suit was brought; that, after considerable negotiations and discussions, the plaintiffs deliberately agreed to accept the amount and signed title deeds to the land for the price of $2,000 each; that plaintiffs have no interest in the notes and in the $5,000 which he received.
The contention on the part of the defendant Davis is (and in this he is joined by his codefendants) that L. L. Witkowski was really the owner of the lands.
Defendant Davis states as a witness: That all parties knew of the amount to be paid to H. & O. Newman in order to obtain from the Newmans a transfer of the land to them. That he was not representing the plaintiffs. That they were represented by another attorney whom he notified of the fact that he did not consider himself the attorney of plaintiffs.
That he submitted the offer made by the Newmans, and asked, if not acceptable, that a counter proposition be made.
Plaintiffs insist that they did not know •of the additional $35,000, and further insist that defendant Davis was their attorney at the time; that it was after the compromise ■that it became known to them that a larger amount had been paid.
The attorney to whom the defendant Davis refers as the attorney for plaintiffs testified that he had naught to do with representing plaintiffs in court in matter of the sale of the whole property.
It is true, none the less, that this attorney advised at least one of the plaintiffs to accept the compromise.
He advised the acceptance of the compromise.
Plaintiffs answered the appeal, and asked that the judgment be amended by inserting the word “each” to the third and fourth paragraphs of the decretal part of the judgment to show more clearly that each of the plaintiffs and the interdict are given judgment against C. E. Davis, Adolph Witkowski, and L. L. Witkowski in solido for one-sixth of the $5,000 in cash and for one-sixth of the $30,000 of notes; and that the judgment be further amended by recognizing a lien in favor of plaintiffs, and that part of the $30,000 of notes and lands which belong to Adolph Witkowski and L. L. Witkowski secure to plaintiff the payment of one-sixth of the $5,000 in cash received by Davis; that, as amended, the judgment be affirmed.
Of this later.
On the Merits.
As relates to document offered in evidence by plaintiff without restriction.
The fee of 50 per cent, before mentioned was large. It was never approved by at least one of the plaintiffs who had never heard of the fee.
The others had heard of it, and that was all. They had not signed the contract, and had never been called upon to sign it.
Plaintiffs were not bound for this fee.
The curator of the interdict having been called upon to sign the contract as to this fee would have had no authority to agree to so large an amount for the services which resulted in a compromise before the suit was ever called for trial.
Leaving the subject of the amount of the fee, we will state that the relations between the three plaintiffs and the defendant Davis had become strained. Ordinarily that would not have signified anything. But here the defendant had been the confidential adviser of the father of these plaintiffs. The parent in his last moments had requested the plain *693 tiffs to consult this defendant as their attorney. This defendant brought suit for them.
Plaintiffs, for some reason not fully explained, were not as well disposed toward the defendant as their attorney as they had been. With or without cause, they complain■ed of his acts.
In one. of the suits against the defendant ■one of the plaintiffs stoutly asserted as a witness her complaints against defendant.
The defendant in that suit was president of a corporation which had been formed to continue the business affairs of the succes-sion. The purpose of this corporation was to continue the management of the property as it was thought for the benefit of the heirs.
The complaints brought by plaintiff evidently annoyed the attorney who then chose to consider L. L. Witkowski and Adolph Witkowski, particularly the former, as fully authorized to represent the interest in matter of the land which was the consideration in the compromise before mentioned.
The attorney sought relief from the complaints of plaintiffs. In thus seeking he concluded to enter into negotiations with the Witkowski in whose name the land was, although nominally.
Under the fire of harsh and unkind criticism, it is sometimes a difficult task on the ■part of the attorney to continue to discharge his duties as such.
But the property was not owned by L. L. Witkowski, or, at any rate, the price of it was to be accounted for by him.
In an agreement of compromise, to which this attorney was a party, the proceeds of this land were to be “divided equally among ■the heirs, parties thereto.”
If the three defendants were to have their ■own way, there would not be an equal division, for then only $30,000 would be considered and of that amount only $12,000 would be divided, while $65,000 was the price paid for the property.
At this time, we desire to state, in order to sustain the proposition that the amount over $30,000 belonged to all the heirs, at first there were two negotiations in matter of the sale of the property.
The first negotiation was with Newman & Co., to the end of having the property returned to the heirs, and, after its return, to sell it and divide the proceeds.
In the first negotiation, which resulted in the return of the property, the heirs did not receive a cent.
The other negotiation was with the purchaser Janes.
The price he paid enabled the defendant to pay the sum of $12,000.
The property was only returned after all the parties had signed the quitclaim deeds for the amount of $2,000 each, which could only be recovered by the sale of the property, and which was realized by the sale of the property to Janes.
Without the purchaser Janes, a compromise would not have been possible.
Plaintiffs, not having received anything after the return of the property, continued by the terms of the negotiation to own their interest in the property.
Janes bought that interest as well as that of the other heirs.
The former, before the sale to Janes, were entitled to know for what price the property was sold. If, after obtaining this information, they had consented to receive less than the whole price, it would have been their concern.
But the evidence shows that they did not know of this whole price, and did not consent knowingly to receive less.
During this time, the defendant, the attorney, was the attorney of all the parties, and not alone the attorney for L. L. Wit *695 kowski. It was incumbent upon him under the circumstances to let the parties know at the time of the negotiations for the return of the property precisely the amount which they were to receive by an equal division of the proceeds.
The succession of the late Simon Witkowslci, father of these heirs, had been in his hands, and the suit which resulted in a compromise was brought by him as attorney. He had never been legally discharged and had never asked for his discharge.
Leaving the question relating to the attorney and taking up the question in so far as Adolph and L. L. Witkowski are concerned, they also were unmindful of their obligations. They sought to avoid the compromise. They had no right to the proceeds of the sale to the extent of $35,000, which they had bound themselves to be equally divided among all the heirs. They could not by going through the form of signing a quitclaim, similar to the one signed by each of the plaintiffs, acquire an absolute right to the amount above stated.
The signing of this quitclaim gives quite a color to the charge that it was done in order to induce the plaintiffs to believe that the amount each heir was receiving was $2,-000, while in reality these defendants were receiving quite a large amount in excess of the $2,000.
[4] This want of knowledge of the plaintiffs related to the material part of the contract.
Plaintiffs never wished, judging from the testimony, to make an abandonment of the excess over the amount received. There is not- the least evidence to sustain the most remote presumption on this ground.
Now, as relates to the interdict, it cannot for a moment be contended with any degree of reason that his legal representative and a family meeting advised in his interest would have in any way consented to let him receive less than the amount to which he was entitled. The evidence is conclusive upon that point. That was the statement of the witnesses who testified upon the subject.
Prom every aspect of the case, we have not found it possible for an instant to hold that the amount in excess of 'that received does not belong to all the heirs.
In the I-Iodge Case, 48 La. Ann. 54, IS South. 899, a point very similar was decided. The attorney had failed to give information to his client regarding the latter’s business. The court said, “We cannot recognize the right of an attorney to dispose of the interest of his client in the manner it was done and at the same time allow him a fee.”
In the decision in Barker v. York, 3 La. Ann. 90, the court 'said it would scrutinize the dealings of attorneys in regard to their clients and not sanction them if not reasonably just, especially when the clients are persons of inferior business capacity. Mills v. Mills, 26 Conn. 213.
The following from Cyc. is quite pertinent r
“An attorney can. in no case without his client’s consent buy and hold otherwise than in trust an adverse title or interest touching the thing to which his employment relates or put himself in an adverse position.”
In Henry v. Raiman, 25 Pa. 354, 64 Am. Dec. 703, the court in a case similar in many respects held that an attorney employed to effect a particular thing cannot defeat it by buying an adverse interest; that the attorney cannot retain the interest of his client. His only remedy, if he has any, is in a quantum meruit.
Lastly, as relates to plaintiffs and appellees’ petition to amend the judgment: It is granted to this extent by inserting the word “each” in the third and fourth paragraphs of the decretal part of the judgment. The further amendment asked for to the end of having a lien recognized is not granted. The judgment in that respect will remain unchanged. Plaintiffs have the privilege, if *697 any they have, by which the claim was secured, and nothing can be added to it by recognizing any further privilege than heretofore granted.
For reasons assigned, the judgment is amended as above, and, as amended, it is affirmed.