PÉROSINE LEBLANC *v.* EUGÈNE BERTANT et · als.

An error of fact, whether proceeding from fraud or not, is always subject to re-examination at the
instance of the party aggrieved by the error.
Any remission made to heirs is an advance on their portion in the succession, and is, therefore, sub-
ject to collation. C. C. 1307, 1308, 1309, 1310, 1311.
A debt to the succession, not yet due, is susceptible of partition.

APPEAL from the District Court of the Parish of St. James, *Lawes, J.*
     *Geo. S. Lacey* and *J. K. Gaudet* for plaintiff and appellant. *J. H. Illsley,
Berault & Legendre & Mills,* for defendants.

BUCHANAN, J. Plaintiff is the sole surviving issue of the first marriage of
*Madelaine Dubon* by her first marriage with *Silvain LeBlanc.*

Defendants are half-brothers of plaintiff, issue of the second marriage of her
mother with *Auguste Bertant.*

Plaintiff sues for a partition of the succession of her mother; she prays that
the basis of said partition, and the interests of the several heirs, be fixed by judg-
ment of the court; that the defendants *Eugene Bertant, Auguste Philibert Bertant,*
and *Trasimon Bertant,* be jointly and severally decreed to be indebted to the
succession of their deceased mother, in the following amounts, and be held to
collate the same in the partition, to wit:

1st. $19,000, (nineteen thousand dollars), with 8 per cent. interest from 1st
April 1855 until paid.

2d. $50,000 (fifty thousand dollars,) payable fifteen years from March 10th 1854, or sooner, if the law will permit, with 8 per cent. interest from 1st January 1854, until paid.

3d. $10,266 66-100 (ten thousand two hundred and sixty-six dollars, sixty-six cents), with 5 per cent. interest from 10th March 1854.

4th. $500, (five hundred dollars) for ½ family coach, &c., appropriated by them.

Plaintiff further prays that *Augustus Philibert Bertant* be decreed indebted to the succession in the sum of eight hundred dollars, price of slave *Lucie*, purchased by him from his mother on the 26th July 1858, with 8 per cent. interest on instalments of price from maturity ; that widow *Bertant's* succession be decreed to be indebted to plaintiff in the sum of eleven hundred and fifty dollars, for interest of plaintiff in the succession of her deceased brother, *Jean Baptiste LeBlanc*, with interest of 5 per cent. from the date of her mother's decease (the usufructuary), August 11th 1858 ; that plaintiff be charged with the price of the slaves *Celestine* and *Philippe* ($1000,) bought of her mother, on the 26th July 1858 ; that after fixing the basis of the partition and the collations to be made, the whole matter be referred to the Recorder of St. James parish to make the partition according to law, and the legal rights of the parties, and for general relief.

The answer of defendants denies their liability to collate the four first items above stated. The last of those items, the family coach, is not insisted on in this court.

Defendants had judgment in the District Court, and plaintiff appeals.

The decision of the cause involves three principal facts.

1st. Have defendants paid a note subscribed by them in favor of their mother, for the sum of nineteen thousand dollars, price of property purchased by them from her on the 18th October 1853 ?

2d. Did defendant really pay in cash to their mother, the sum of ten thousand two hundred and sixty-six dollars, sixty-six cents, on account of sale of property by their mother to them of date the 10th March 1854 ? Or did not this amount enter into the amount of the loan of the same date by their mother to them, and was there not an error committed therein to the prejudice of their mother, caused by a fraudulent concealment and advantage taken of their mother's ignorance, on the part of the defendants ?

3d. Was the sum of sixteen thousand dollars, aggregate amount of four receipts for interest on the loan of fifty thousand dollars, really paid by defendants to their mother ?

I. The affirmative of this question is maintained by the counsel of defendants, firstly, upon the presumption arising from the possession of the note by them. But this presumption is of little or no weight in the present case, in view of the position of the parties. The note was made on the 18th October 1853, payable in all the month of March 1855. The payee, *Mrs. Widow Bertant*, was a very aged person, and illiterate. She lived with her sons, the makers, from the time this note was made, until her death, three years and four months after its maturity. She necessarily depended upon her sons for the transaction of her business, and her papers have always been within their reach, if not in their custody.

Secondly, defendants rely upon a certificate of the Recorder of the parish of St. James, showing that the mortgage to secure the payment of this note, was erased and cancelled upon his registers on the 12th December 1856. But this certificate does not state that this erasure was made upon a formal acquittance and release

of the mortgage. Therefore, we must presume that it was erased by the Recorder upon the production of the note to him by the makers (he being also the notary before whom the act of mortgage was passed,) in accordance with the 3346th article of the Civil Code. This certificate, therefore, proves nothing more, in regard to the payment of the note, than that defendants were in possession of the note on the 12th December 1856 ; and adds nothing to the presumption desirable from their possession of it on the trial of this cause.

Thirdly, the counsel of defendants argue, that the payment and satisfaction of the note in question must be inferred from the certificate of mortgages annexed to, and copied in, the notarial act of mortgage granted by the defendants to *Lobit & Charpentier*, on the 15th January 1857 ; to which act the widow *Bertant* was a party. But it will be found, that there is nothing in this act, nor in the certificate of mortgages, which necessarily implies an acknowledgment of payment of the $19,000 note on the part of the widow *Bertant*.

This certificate of mortgages, indeed, makes no mention, (among the numerous mortgages which it recites,) of the mortgage granted on the 18th October 1853, to secure the payment of this note. We have already seen that that mortgage had been erased about a month previous to the certificate. But nothing more, can be inferred from this, even supposing the *Widow Bertant* to have been particularly informed of the contents of the certificate, than that she was aware that her sons had caused the mortgage to be erased, that the auxiliary obligation of mortgage had been released, but by no means, that the principal obligation evidenced by the note, had been satisfied. The act itself, to which the certificate was appended, affords almost a conclusive presumption of the contrary. For the defendants, *August Philibert Bertant, Eugene Bertant*, and *Trasimon Bertant*, appear before the notary, and declare " that they are engaged in the cultivation of sugar, and that in conducting the said business they require the aid of the firm of *Lobit & Charpentier*, merchants in New Orleans, *in making them advances in money and supplies, and in accepting their drafts on said firm*, and to secure the said firm in making them the said advances *to the amount of fifty-five thousand dollars*, they give *Lobit & Charpentier* a mortgage on their two plantations, in St. James and Assumption, with the slaves, &c., thereupon. And in order to facilitate her sons in obtaining these advances, the widow *Bertant* intervenes in the act and consents that a mortgage held by her upon the same property, for the security of a loan upon interest for $50,000, having many years to run, recorded 10th May 1854, shall be postponed to that granted by her sons to *Lobit & Charpentier*. Her other and earlier mortgage to secure the note of $19,000 did not figure upon the certificate of mortgage, having been cancelled a month previously. But the cancellation of this mortgage, bearing as it did upon a debt, past due and exigible, was perhaps essential to the defendant, for procuring the accommodations from their merchants, of which they stood in need. The same motive which influenced their mother to give a lower rank to her other mortgage security, namely, the desire to aid her sons' in their business, would naturally account for her consent to the release of the mortgage securing a note, which she had not pressed at its maturity, against the makers.

Against the presumption of payment attempted to be drawn from the circumstances above mentioned, it is urged that the evidence renders it incredible, if not impossible, that the defendants should have really and truly paid the nineteen thousand dollar note. The defendants are found in possession of this note, for the first time, on the 12th December 1856, one year and eight months after its ma-

LeBlanc
v.
Bertant.

turity. If they paid it on that day, it amounted, with eight per cent. interest from maturity, to twenty thousand and forty-five dollars. Now, it is proved that all the resources of the defendants were derived from their two sugar plantations ; and that all their crops went through the hands of their factors, *Lobit & Charpentier*. We have in evidence all their accounts with those factors during the whole period embraced in these transactions ; and those accounts furnish no trace of this large sum which is said to have been paid. On the contrary, at the very time that the mortgage is released, we find the *Bertants* declaring themselves to be in need of large advances from their factors, and mortgaging their property to obtain such advances. The conclusion which we have drawn from the whole of this evidence is, that the first question of fact should be answered in the negative.

II. On the 10th March 1854, three large cash transactions, evidenced by as many notarial acts, took place between the widow *Bertant* and her sons, the defendants. *First,* she sold her interest in the community of acquests of her second marriage, to them. for thirty-eight thousand and thirty dollars, cash. *Second,* she sold to them her undivided half of certain lands and slaves, for ten thousand two hundred and sixty-six dollars, sixty-six cents, cash, (exclusive of the assumption of certain debts due by her.) And *third*, she lent to her sons a sum of fifty thousand dollars (cash,) to be repaid in fifteen years, they paying in the mean time interest yearly for the use of the same. It would thus seem that forty-eight thousand two hundred and ninety-six dollars were paid over by the defendants to their mother, who immediately paid it back to them with the addition of seventeen hundred and four dollars. to make up a round sum of fifty thousand dollars. It is not likely that these large sums actually changed hands twice on this occasion. The true state of facts would rather seem to be, if there were no other outstanding transactions between the parties, that the cash price of the property sold had been invested, by consent of parties, in a simultaneous loan of a like or similar amount to the purchaser. But plaintiff has proved, (and it is not denied,) that the defendants had at that time in their hands an additional sum of twelve thousand dollars belonging to their mother, being so much loaned to them by her, two weeks previously, (24th February 1854) to pay for the plantation bought by them in assumption of the succession of *Barilleau.*

Plaintiff contends that the fifty thousand dollar loan is made up of

1st. The interest of widow *Bertant* in the community . . . . . . . . . . . . . . . .$38,030
2d. The *Barilleau* loan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12,000
                                                                                                              ————
                                                                                                              $50,030

And the petition charges that it was the effect of error on the part of her mother, produced by fraud on the part of the defendants, that the item of $10,266 66, which is the subject of our present inquiry, was not included in the loan on mortgage, which would have been thus swelled up to the amount of $60,296 66 instead of $50,000. The District Judge has rejected this portion of plaintiff's petition, on the ground of its being tantamount to a plea of *non numerata pecunia*, which *Mrs. Bertant* would not be allowed to make without a counter letter, and which plaintiff standing in the rights of her mother, cannot make. We do not concur in this view of the case. An error of fact, whether proceeding from fraud or not, is always subject to re-examination at the instance of the party aggrieved by the error. In the present case, we are not satisfied that defendants have practised any fraud or wilful concealment in their settlement

38

of accounts with their mother, on the 10th of March 1854. But there certainly has been an error, to an amount about equal to the amount mentioned in this question. We conclude that the defendants ought to collate that amount in partition.

III. The mortgage loan of $50,000 bore interest at the rate of 8 per cent., or $4000 per annum from the 1st January 1854, payable yearly. There are four receipts for the payment of this interest given in evidence, each for four thousand dollars. Three of them are dated on the same day, the 3d April 1857, and are for the interest of the years 1854, 1855, and 1856 respectively; and the fourth is dated 1st June 1858, and is for the interest of the year 1857. They are signed with the ordinary mark of the widow *Bertant*, and by several witnesses. Two of the subscribing witnesses of these receipts have proved that the amount specified in them was counted to widow *Bertant*, who took the same into her possession in their presence. These large sums have disappeared without leaving any trace. *Mrs. Widow Bertant* is proved to have been very economical, living entirely at home, and having no expenses. It appears reasonable to expect that so large a sum as twelve thousand dollars, received on the 3d April, 1857, would have been put in some safe place of deposit. The evidence forbids the belief that it has been spent by the old lady; and if she had lost it, it would certainly have been missed, and would have been the subject of search and enquiry. Then, as to the smaller sum of four thousand dollars paid on the 1st of June, 1858, about two months before the death of the widow *Bertant*, this also disappeared; for there was no money whatever found when the inventory was made, in the month of September following. Other evidence shows that *Mrs. Bertant* kept little or no money about her. The only reasonable inference from all this is, that the formality of counting down on a table the sums expressed in these receipts, and putting them into the hands of the widow *Bertant*, in the presence of witnesses, was only intended to cover a remission of the debt for interest for the years expressed. Her age and infirmities made it necessary that the persons with whom she lived, her children, in whom we cannot doubt she reposed all her confidence, should be the depositaries of her funds.

If she intended, as we presume from the facts just alluded to, to make a remission to the defendants of this interest, such remission is considered as an advance on their portion in her succession, (C. C. Art. 1307); and is therefore subject to collation (1308). See also articles 1309, 1310, 1311.

A question of law remains—whether the debt of fifty thousand dollars, for money lent by widow *Bertant* to her sons in 1854, payable the 1st January 1869, is susceptible of partition between the heirs of widow *Bertant*, before the maturity of the debt.

No reason is perceived by us why this partition may not be made at once.

The allegations of the petition in relation to the indebtedness of the plaintiff, and of *Auguste Philibert Bertant*, defendant, to the succession of their mother for slaves purchased by them from her, on the 26th July, 1858, and in relation to the indebtedness of the succession to plaintiff for her rights as heir of her deceased brother, *Jean Baptiste LeBlanc*, are not disputed. Those claims will therefore be allowed in partition.

It is therefore adjudged and decreed, that the judgment of the District Court be reversed; and that the parties be referred to the Recorder of the parish of St. James, to make a partition of the estate of their ancestor, *Mrs. Widow Au-*

*guste Bertant*, upon the basis, and subject to the collations prescribed in the foregoing reasons for judgment; and that the costs of this appeal be paid by the defendants and appellees; the costs of the court below to be paid by the mass.

LAND, J., absent, concurring.

DUFFEL, J., recused himself.