(57 South. 789.)

No. 19,059.

Succession of DRYSDALE.

(Jan. 29, 1912.   Rehearing Denied Feb. 26, 1912.)

*(Syllabus by the Court.)*

1. DESCENT AND DISTRIBUTION (§ 69*) — RIGHTS OF HEIRS—DONATIONS AND TESTAMENTS.

The wife of a testator who leaves three or more legitimate children cannot take from him, by donations of any kind, more than one-third of his estate.   Civil Code, art. 1493.

[Ed. Note.—For other cases, see Descent and Distribution, Cent. Dig. §§ 208–212; Dec. Dig. § 69.*]

2. WILLS (§ 710*) — RIGHTS OF HEIRS—FORFEITURE.

Article 1029 of the Civil Code, relative to the forfeiture of an heir's share in succession property embezzled or concealed by him, has no application to a legatee who was at the same time executrix of the estate.

[Ed. Note.—For other cases, see Wills, Dec. Dig. § 710.*]

3. WILLS (§ 740*)—MINORS AND THEIR TUTORSHIP—RIGHTS OF LEGATEES — VALIDITY OF CONTRACTS—SALE BY TUTRIX.

A sale by legatees to a colegatee of their respective shares in an estate will be annulled when procured through a fraudulent suppression of the fact that the purchaser, late executrix of the estate, had in her possession common assets to a large amount, which had never been inventoried.   The sale by the tutrix of a minor's share in a succession, when not authorized by the court, on the advice of a family meeting, is an absolute nullity.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1888–1895; Dec. Dig. § 740;* Guardian and Ward, Cent. Dig. § 172; Dec. Dig. § 41.*]

4. LIMITATION OF ACTIONS (§ 183*) — PRESCRIPTION—PLEADING—NECESSITY.

A general plea of prescription is bad and will not be considered by the court.   The particular prescription relied on should be specially pleaded.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 683–692; Dec. Dig. § 183.*]

5. ESTOPPEL (§ 54*)—EQUITABLE ESTOPPEL—KNOWLEDGE OF FACTS.

There is no equitable estoppel against a party who was ignorant of the real facts and of his legal rights in the premises.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 128–135; Dec. Dig. § 54.*]

6. PARTITION (§ 29*)—BAR OF SUBSEQUENT ACTION.

Property not included in a prior partition may be made the subject of a supplemental partition.

[Ed. Note.—For other cases, see Partition, Dec. Dig. § 29.*]

Appeal from Civil District Court, Parish of Orleans; E. K. Skinner, Judge.

In the matter of the succession of Andrew Drysdale.   Petition by Mrs. Marcella Drysdale Ennis and others against the executors of the succession of Mrs. Julia P. Drysdale and another.   From a judgment for the petitioners, an appeal is taken.   Reversed, with directions.

Woodville & Woodville, for appellants John Thomas Pike and Mary Ann Pike.   Geo. W. Flynn, for appellees Mrs. Marcella Drysdale Ennis and others.   Chas. I. Denichaud, for appellee Mrs. Jeannette Carpenter.

LAND, J.   Andrew Drysdale, a resident of the city of New Orleans, died in Canada, in August, 1896, leaving a surviving wife, Mrs. Julia Pike Drysdale, and children of a prior marriage.

Decedent left a last will in notarial form, of date October 16, 1893, which was duly probated.   The testament contains the following declarations and dispositions:

"My name is Andrew Drysdale, I am seventy three years old, I was married twice, by my first marriage with Mary Cunly, I had four children, James Drysdale, Marcella Drysdale, wife of William Ennis, Jeannette Drysdale, wife of Thomas P. Carpenter, and John Drysdale, they are all living except John Drysdale, who is dead.   He left four children, Samuel, Jeannette, Hazel and Rodney, I am now married to Julia Pike.   We have no children."

"I give and bequeath to my present wife, in full ownership, one third of all the property which I may die possessed of, the balance of my property to be divided among my descendants according to law."

"I appoint my wife and James Fahey, joint executors of this will with seizen."

Mrs. Julia Pike Drysdale qualified by taking oath as executrix on September 22, 1896, before a notary public at Hamilton, Canada.

On November 24, 1896, Mrs. Marcella Drysdale Ennis, James Drysdale, and the widow and minor heirs of John Drysdale, filed a motion for an order to compel the executrix to commence and complete an inventory of the estate as previously ordered by the court. This motion was never tried.

On December 1, 1896, Mrs. Jeannette Drysdale, wife of Thomas P. Carpenter, joined, authorized, and assisted by her said husband, filed a suit for a partition of the estate of Andrew Drysdale, represented as consisting of his community half interest in a certain lot, with improvements thereon, fronting on Esplanade avenue, city of New Orleans. Issue was joined on this petition by the answer of all the defendants, to wit, Mrs. Julia Pike Drysdale, individually, as executrix, and as legatee of the decedent, by the widow and minor heirs of John Drysdale, by Mrs. Marcella Drysdale, wife of William J. Ennis, and by James Drysdale.

The experts appointed by the court to examine and appraise the property to be partitioned valued the lot on Esplanade avenue at $7,000, and reported that in their opinion said property was not susceptible of a division in kind between the interested parties. The partition suit was regularly tried, and on December 23, 1896, judgment was rendered, recognizing the community rights of Mrs. Julia P. Drysdale in the entire estate acquired during her marriage with the decedent, and recognizing the other parties as the children and grandchildren of the decedent, and sending them into possession, in the proportion established by the will of the decedent, of the entire estate of Andrew Drysdale, both real and personal, more particularly, however, the lot of ground on Esplanade avenue, and ordering a partition of all and singular the entire real and personal property owned in common between the plaintiffs and defendants, and further ordering the sale of said real property for the purpose of effecting a partition, and refer-

ring all parties to a notary public to complete said partition.

On January 26, 1897, all the recognized heirs of Andrew Drysdale appeared in person, or by attorney, before the designated notary, and declared that, pursuant to the judgment rendered in the partition suit, and a judgment rendered in the succession of John Drysdale, authorizing and empowering Mrs. Anna M. Drysdale, tutrix, to sell and transfer the interest of the minor heirs of said decedent in the property described in the act at private sale in order to effect a partition, said appearers granted, bargained, sold, assigned, and delivered unto Julia Pike Drysdale, "all their right, title, share and interest of every nature and kind whatsoever, without any exception or reservation, in and to the estate of the late Andrew Drysdale," and especially in and to the lot on Esplanade avenue, for the price and consideration of $4,000, paid in cash by the said purchaser to the four heirs at law of Andrew Drysdale.

As Mrs. Julia P. Drysdale had a community half interest in the property, and one-third interest as legatee in the half belonging to the estate of Andrew Drysdale, it follows that the price of $4,000, paid for the two-thirds interest of the forced heirs of said Drysdale, must have been based on a property valuation of $12,000.

The share of the forced heirs in the lot appraised at $7,000 was only $2,333.33⅓; and hence they must have received $1,666.66⅔ for their shares in other property belonging to the estate.

Mrs. Julia P. Drysdale, having thus acquired all the right, title, and interest of her husband's heirs in the estate, took possession of all the community property, and remained in undisputed possession of the same as owner during her life. Mrs. Julia P. Drysdale died in August, 1905, and a few days later her succession was formally opened in the civil district court for the parish

of Orleans, and all the property left by her was duly inventoried. Thomas Pike and Mary Ann Pike, a brother and sister of the deceased, claimed the succession as the next of kin. But they were confronted·with an application for the registry of a copy of an alleged last will of Mrs. Julia P. Drysdale, purporting to have been executed and probated in Canada. This alleged will named Thomas P. Carpenter, the son-in-law of Andrew Drysdale, as one of the executors, and contained dispositions in favor of the said Carpenter and his wife, born Jeannette Drysdale. The heirs of the decedent opposed the registry and execution of the document, on the ground that the signature of the alleged testatrix was a forgery. The original instrument was brought from Canada, and after a long litigation, including several appeals to the Supreme Court, the signature of Mrs. Drysdale was finally adjudged to be a forgery.

The inventory of the estate of Mrs. Julia P. Drysdale disclosed property, rights, and credits valued at $39,000, and the litigation occasioned the production of statements rendered by Thos. P. Carpenter to Mrs. Julia P. Drysdale, as "adjuster" of the estate of Andrew Drysdale, apparently showing that said estate was worth more than $30,000. These facts induced some of the heirs of Andrew Drysdale to believe that they had been despoiled of a large portion of their inheritance.

On August 12, 1909, pending the said litigation, Mrs. Marcella Drysdale Ennis and the heirs of John Drysdale, deceased, filed a petition, claiming that all the property inventoried in the succession of Julia P. Drysdale belonged to the estate of their father, Andrew Drysdale. The executors of the succession of Mrs. Julia P. Drysdale and Thomas H. P. Carpenter, both as executor and individually, were cited as defendants. The petition charged, in substance, that after the death of Andrew. Drysdale the petition-

ers moved the court to enforce the order for an inventory; that they were informed by Mrs. Julia P. Drysdale, represented by Thomas, H. Carpenter, that there was nothing to inventory, as Andrew Drysdale left no property of any kind; that after some discussion and delay Mrs. Drysdale and Carpenter conceded that the lot on Esplanade avenue belonged to the community, but maintained that said piece of property was the only asset of the estate of Drysdale, and that a sale of said lot and the division of the·price among the heirs would relieve the necessity of making an inventory; that said property was sold to Mrs. Julia Pike Drysdale for $4,000, which was obtained, as she and Carpenter claimed, out of a $5,000 insurance policy which was paid to the said Mrs. Drysdale; that the said Mrs. Drysdale, acting and conspiring with the said Carpenter, committed a great fraud on petitioners by inserting a clause in the act of sale by which the heirs of Andrew Drysdale disposed of all their right, title, and interest in his estate, including the lot on Esplanade avenue, for $4,000, a price really below the value of said property, when at the time the said Carpenter had in his possession, under his control, real estate, cash, stock, and bonds amounting to fully $39,000, as detailed in the petition, all of which belonged to the estate of·the late Andrew Drysdale; that the said Mrs. Drysdale and Carpenter fraudulently concealed from petitioners and their coheirs the existence of all of said property, except the real estate, and that Mrs. Drysdale, in violation of her trust and oath as executrix, abstracted, despoiled, and concealed said assets for the purpose of converting them to her own use; that the said Carpenter aided and assisted the said executrix in said concealment and wrongful conversion, and after her death illegally sold and disposed of 20 shares of stock, worth $2,000, which had been. purchased by Mrs. Drysdale out of funds belonging to her husband's estate; that

said Mrs. Drysdale and Carpenter, after completing the fraud on the estate, took steps to cover up their wrongdoing by selling and disposing of the securities fraudulently abstracted by them, and reinvesting the proceeds of sale in new securities and real estate; and that all the assets of the succession of the late Julia Pike Drysdale were purchased with the money and proceeds of the sales of stocks and securities belonging to the succession of Andrew Drysdale. The petition further represents that all the frauds therein set forth were kept secret from the petitioners, and were not brought to light until after the death of the said Mrs. Drysdale, and during the pendency of the litigation over the forged will.

The petition further alleges that by reason of the aforesaid concealment and diversion of trust funds the said Mrs. Drysdale be declared as having forfeited all her rights under the will of her predeceased husband. Petitioners prayed for judgment against the executors of the estate of Mrs. Drysdale, and against Thomas H. P. Carpenter, as executor and individually, decreeing all the property inventoried in the succession of Julia Pike Drysdale as belonging to the succession of Andrew Drysdale, or, in the alternative, for judgment against the defendants in the sum of $39,975, with legal interest from August 22, 1896, until paid. Petitioners also prayed for a writ of judicial sequestration, which was issued and executed on all the property of the succession of Mrs. Drysdale, already in the hands of the sheriff under a previous sequestration issued in the litigation over the forged will.

Exceptions of prematurity and of no cause of action were filed by the defendant executors, and were overruled. When the litigation over the forged will terminated, several supplemental petitions were filed, making Thomas Pike, Mary Ann Pike, and Mrs. Carpenter defendants, increasing the amount of the demand to $50,000, and by claiming fruits and revenues.

The defendants Thomas and Mary Ann Pike filed eight different exceptions, which were referred to the merits. The defendants then answered, denying all the allegations of fraudulent concealment and conversion contained in the petition; and defendants averred that all the property left by Andrew Drysdale at his death belonged to the community, and that his surviving wife was entitled to one half thereof as widow in community, and one-third of the other half thereof, under the will of her husband, leaving two-sixths of said property to his forced heirs, which said proportion was purchased by the widow for $4,000, a fair value, fixed by agreement of the parties to the sale.

Mrs. Carpenter answered, denying all knowledge of or participation in the alleged fraudulent acts of and transactions between Mrs. Drysdale and Carpenter, and averring that she received no special benefits from either of them as the result of the partition settlement of the estate of Andrew Drysdale. Further answering, Mrs. Carpenter, as one of the forced heirs of Andrew Drysdale, joined the petitioners in their allegations, except such as charged her with complicity in the frauds set forth in the petition, and in their prayers for judgment.

The case was tried and resulted in a judgment in favor of the petitioners and Mrs. Carpenter, and against Mary Ann Pike and John Thomas Pike, maintaining the judicial sequestration, except as to the Esplanade street property, and decreeing that all the other property, consisting of $13,500 of Louisiana consols, $2,000 in bonds of the city of New Orleans, $1,677.38, balance of cash turned over to the deceased by Carpenter, with legal interest and proceeds of certain notes, amounting to $2,428.05, and rents at the rate of $50 per month from July, 1898, to August, 1905, with legal interest thereon, belonged to the community between Andrew

Drysdale and Julia Pike Drysdale; and further declaring that, by reason of the fraud and concealment proven in the case, the legacy of the disposable portion to the said Mrs. Drysdale be decreed forfeited; and further decreeing said community property to belong one-half to the heirs of Andrew Drysdale and one-half to the heirs of Julia Pike Drysdale; and further decreeing that the plea of manual gift urged by defendants be set aside and dismissed, as not proven, and said defendants to pay the costs of the proceeding.

Mrs. Drysdale remained in Canada for about a year after the death of her husband. She employed Carpenter as her agent to take charge of and to settle the estate of her husband. Carpenter came to New Orleans, and arranged the partition settlement already mentioned, by which the heirs of Andrew Drysdale sold to Mrs. Julia P. Drysdale all their respective succession rights for the sum of $4,000. In May, 1897, Carpenter rendered to Mrs. Julia P. Drysdale three statements, A., B., and C, showing the result of his administration. Statement A, under the caption of "Estate Late Andrew Drysdale of New Orleans, La.," showed the following assets:

| | | |
|---|---|---|
| House and lot Esplanade avenue.. | $ 8,000 | 00 |
| Louisiana state bonds........... | 13,500 | 00 |
| Cash Traders' Bank............. | 4,075 | 00 |
| Cash in hands of Carpenter....... | 400 | 00 |
| Life assurance ................. | 5,000 | 00 |
| Cash Union Nat'l. Bank.......... | 453 | 98 |
| Balance cash do................ | 52 | 00 |
| Cash in Germania Savings Bank.. | 696 | 40 |
| A/C's in hands of L. P. Labatut... | 378 | 05 |
| Note P. Mullen................. | 1,200 | 00 |
| Do  E. Suydam................. | 300 | 00 |
| "    J. W. Ryan............... | 200 | 00 |
| "    V. Viviano............... | 400 | 00 |
| Two shares Temperance Hall.... | 20 | 00 |
| Jewelry and Diamonds.......... | 2,150 | 00 |
| Silverware, pictures, and household effects ..................... | 250 | 00 |

| | | |
|---|---|---|
| Note Tiche ............. | $ 150 | 00 |
| "    Dobell............. | 350 | 00 |
| "    Clayton ......... | 8,500 | 00 |

$9,000 00
Considered of no value.

$37,075 43

Statement B, under the same caption, showed disbursements of $4,433.01. The list embraces expenses of last illness, of funeral, and of vault and lot; also attorney's fees and $3,000 paid to Marcella Ennis, James Drysdale, and the estate of J. Drysdale for their shares of the estate.

Statement C showed account of Carpenter with estate: Debits, $4,540; contra, a/c of T. H. P. C., $4,346.40; balance due estate, $193.60. Check inclosed to balance in full. At the foot of this statement, appears the following writing:

"May 27, 1897. Received payment. [Signed] Julia P. Drysdale."

Carpenter settled his indebtedness to the estate as follows:

| | | |
|---|---|---|
| Undertaker's bill paid............. | $ 370 | 40 |
| Accounts paid................... | 16 | 00 |
| Mrs. Carpenter's share in Esplanade house ........................ | 1,000 | 00 |
| Commissions of 10% for settling up estate on the gross estate, less life assurance and jewelry, etc.... | 2,950 | 00 |

$4,345 40

The undertaker's bill appears in statement B.

These statements show that Mrs. Drysdale received net assets to the amount of $32,886.02 as the result of the adjustment, exclusive of $3,900, due by Carpenter, and settled as above.

From these statements, it appears that at the time of the death of Andrew Drysdale the assets on hand acquired during the second marriage, and presumably belonging to the community, included all the items on statement A (except $5,000 of life insurance) and Carpenter's indebtedness to the estate, $4,540, as per statement C. Hence the property left at the dissolution of the marriage aggregated $36,615.43. It is shown by the testimony of Miss Pike that Mrs. Drysdale instructed her agent, Carpenter, to settle with the heirs on the basis of $12,000, as representing all the property belonging to the community in which she had one-half in-

terest as widow and one-third interest as legatee. The price of $4,000, paid the heirs for their shares in the partition sale, shows that they were settled with on that basis. It follows that Mrs. Drysdale withheld assets to the amount of $24,615.43. The legitimate disbursements for account of the estate, as shown by statement B, amounted to $1,433.01, leaving a balance, after the partition of January, 1897, of $23,182.42 in the hands of Mrs. Drysdale, as executrix of the succession. The records of the court, the testimony of Mr. McCloskey, attorney for the estate and agent of Mrs. Carpenter, of Mr. Cahill, notary, who passed the act of partition sale, of Mr. Grasser, the attorney who accepted the act as agent of Mrs. Drysdale, and the testimony of Mr. Flynn, attorney of three of the heirs, show conclusively that the only property known to them as belonging to the estate of Andrew Drysdale was the improved lot on Esplanade avenue. That Mrs. Drysdale fraudulently concealed the existence of the bonds, money, and notes, as per statement A, is proven beyond question. She paid Carpenter · $2,950 to effect a settlement with the forced heirs of Andrew Drysdale on the basis of a valuation of only $12,000. Mrs. Drysdale did not disclose to the heirs, with the exception of Mrs. Carpenter, that she claimed any of the property as her own. Mrs. Carpenter testified that she knew some of the property left by her father, to wit, Esplanade residence, Temperance Hall stock, life insurance, bonds, jewelry, and household effects; that Mrs. Drysdale told her that the Esplanade property was all there was to divide among the heirs; that the rest of the estate belonged to her, and, should she divide it with the heirs in New Orleans, it would only be squandered.

In the case at bar, the defense on the merits is that Mrs. Drysdale acquired title to over $24,000 of the property acquired during the marriage by manual gift from her husband.

The testimony of the Pikes show that Andrew Drysdale gave to his wife $5,000 and other sums of money. This is corroborated by the account of Mrs. Julia Drysdale with the Commercial-Germania Trust & Savings Bank from July 2, 1890, to September 28, 1893, showing following deposits:

| | | |
|---|---|---:|
| July 2, 1890 | $ | 71 00 |
| " 10, 1890 | | 135 00 |
| " 20, 1891 | | 250 00 |
| January 11, 1892 | | 10 00 |
| April 16, 1892 | | 20 00 |
| July 9, 1892 | | 10 00 |
| October 12, 1892 | | 5,000 00 |
| June 30, 1893 | | 114 09 |

No other deposits were made in this bank after June 30, 1893. On September 28, 1893, Mrs. Drysdale drew out $5,000, and on October 23, 1896, $660, and on November 24, 1896, $37.08. Mrs. Drysdale presumably deposited the $5,000 in some other bank. On March 23, 1896, she purchased $3,500 in Louisiana state consols at a cost of $3,460.62, paid by her check on the Union National Bank. It is reasonably certain from the evidence that in 1896 Mrs. Drysdale invested $2,100 in the purchase of the mortgage notes of Mullen, Suydam, Ryan, and Viviano, listed on Carpenter's statement A. Besides the notes and bonds just mentioned, Mrs. Carpenter had, when her husband deceased, balances in bank as follows:

| | | |
|---|---|---:|
| Germania Savings | $ | 696 48 |
| Union Savings | | 453 98 |
| Traders' Bank of Canada | | 556 68 |
| | | $1,707 06 |
| Notes and bonds above | | 5,600 00 |
| Total | | $7,307 06 |
| Accounts with Labatut | | 378 05 |

[1] This is a fair estimate of the assets that may have been derived from manual gifts of the husband. This estimate leaves a balance of about $15,500 of assets, over and above manual gifts, wrongfully retain-

ed by Mrs. Drysdale. As executrix, she was bound to inventory and account for all the community property in her hands. As legatee of the disposable portion which could not, including donations inter vivos, exceed one-third of the testator's estate (C. C. 1493), she had no legal right to retain assets in which the forced heirs owned a two-thirds interest. The community assets in the hands of the executrix, less debts and costs, should have been divided into two equal parts, and the forced heirs of the husband should have received two-thirds of one-half of the whole.

In such a partition, the heirs would have received at least $7,000 in cash values more than the sum of $4,000 paid them by Mrs. Drysdale.

Defendants John Thomas Pike and Mary Ann Pike pleaded the following exceptions to plaintiff's petition, to wit:

"(1) No cause of action.
"(2) Prescription.
"(3) Res adjudicata.
"(4) Estoppel by record.
"(5) Estoppel by conduct.
"(6) Equitable estoppel.
"(7) Jurisdiction ratione materiæ.
"(8) Jurisdiction ratione personæ."

[3, 5] Counsel for appellants in their brief discuss estoppel by record and conduct, and prescription. As already stated, the record shows that the partition was confined to the lot on Esplanade avenue, and no other property was inventoried and appraised. The sale of the shares of the heirs was not ordered by the court, but was a matter of agreement between the major heirs. The tutrix of the minor heirs of John Drysdale was utterly without authority to enter into any such agreement. There can be no equitable estoppel against a party who is ignorant of the true facts of the case and of his legal rights in the premises.

[4] A general plea of prescription is bad, and will not be noticed by the court. Gaines v. Succession of Del Campo, 30 La. Ann.

246, citing Blake v. Bredall, 15 La. 550, and Mansfield v. Doherty, 21 La. Ann. 396; Walker v. Simon, 21 La. Ann. 671.

The next contention of the appellants is that the court below erred in decreeing the forfeiture of the legacy of the disposable portion to Mrs. Drysdale.

[2] The Civil Code provides that:

"Heirs who have embezzled or concealed effects belonging to the succession, lose the faculty of renouncing; and they shall remain unconditional heirs notwithstanding their renunciation, and shall have no share in the property thus embezzled or concealed." Article 1029.

The Civil Code further provides that:

"If the heir secrete anything belonging to the succession, or has knowingly or in bad faith failed to include in the inventory any of the effects of the succession, he is deprived of the benefit of inventory." Article 1061.

Article 1029 is found under the title "Of the renunciation of successions," and article 1061 under that "Of the benefit of inventory and the delays for deliberating." The latter article has no application to testamentary successions. Article 1029 applies to heirs at law who, without accepting or renouncing the succession, embezzle or conceal its effects. Laws denouncing penalties or forfeitures should be strictly construed. It is only by a strained construction that a legatee of one-third of an estate, who is at the same time in possession as executrix, can be brought within the purview of article 1029. We therefore conclude that the judge a quo erred in decreeing the forfeiture of Mrs. Drysdale's share as legatee in the estate of Andrew Drysdale.

The testimony of Carpenter was taken under commission. He confessed his participation in the concealment of assets of the estate to a large amount. His testimony as to the correctness of statement A is corroborated by the fact that such statement was rendered by him to Mrs. Drysdale, was used as the basis for the settlement between them,

·was preserved by Mrs. Drysdale as a vouch-·er, and by the fact that Mrs. Drysdale paid Carpenter a commission on the assets as per ·statement A, less insurance money, jewelry, ·-etc. The amount of assets listed by Carpenter in 1897 as belonging to the estate of .Andrew Drysdale is confirmed by the fact that Mrs. Drysdale left an estate valued at about $39,000, which could not have been derived from any other source than the community ·of the second marriage.

As the law prohibited Andrew Drysdale ·from disposing of more than one-third of his ·estate by gift or legacy, to the prejudice of his forced heirs, it really makes no differ-·ence what amount of property he gave to his ·second wife during their marriage, since, for the purposes of a partition, property dispos-·ed of by donations inter vivos is considered a part of the estate of the decedent. C. C. 1505.

[6] This suit is in its nature of an action for a supplemental partition of property not included in the partition of 1897, because not disclosed, or withheld by Mrs. Drysdale, in ·possession of the same as executrix and legatee.

The transfer of the shares of the heirs inserted in the act of partition ·was void as ·to the minor heirs of John Drysdale, and ·voidable as to the major heirs, for lesion ·and error and fraud, superinduced and prac-·ticed on the part of Mrs.· Drysdale or her ·agent.

The assets of the estate of Andrew Drys-·dale received by Mrs. Drysdale were, for the .most part; converted into money, or invested ·in real estate and securities. But she retain-·ed the Louisiana consols of the par value ·of $13,500, and they were included in the judicial sequestration. As these bonds are more than sufficient to liquidate the shares ·of the plaintiffs, it is unnecessary to con-·sider the status of the other assets.

. After giving the record our best attention, we conclude that the proven facts warrant a judgment for $7,000, with interest and costs, in favor of the plaintiffs and Mrs. Carpenter.

It is therefore ordered that the judgment below be amended and reversed so as to read as follows:

It is therefore ordered, adjudged, and decreed that Mrs. Marcella Drysdale, wife of Wm. Ennis, and Mrs. Jeannette Drysdale, wife of L. C. Chamberlain, Miss Hazel Drysdale, and Rodney Drysdale, heirs of John Drysdale, and Mrs. Jeannette Drysdale, wife of Thomas P. Carpenter, do have and recover of John Thomas Pike and Mary Ann Pike, the full sum of $7,000, with legal interest thereon from January 26, 1897, until paid, in full settlement of their respective shares as heirs and legatees in the succession of Andrew Drysdale, late of the city of New Orleans, state of Louisiana. It is further ordered that the judicial writ of sequestration herein be sustained, and that the said defendants pay costs below, and that plaintiffs pay the costs of this appeal. It is further ordered that, in the event of the failure of said defendants to satisfy this judgment within the legal delays, the right is reserved to the plaintiffs to apply to the court below for an order of sale of a sufficient amount of the property under sequestration to pay this judgment and costs.