No. ——

First Circuit

---

## WAKEFIELD STATE BANK v. BAKER WAKEFIELD CYPRESS COMPANY

---

(May 4, 1926, Opinion and Decree.)
(June 26, 1926, Rehearing Refused.)

---

*(Syllabus by the Editor.)*

1. **Louisiana Digest—Things—Par. 4, 5.**
Where property seized had been detached from the soil it has lost its condition of immobility and has become movable and therefore was not affected by a mortgage and privilege placed on the immovable.

2. **Louisiana Digest—Obligations—Par. 101.**
The only reasonable meaning that can be attributed to a clause in an agreement "for the convenience of parties and to save costs" was to avoid further litigation as to what part of the property was movable and what part of it was immovable and to settle that question definitely.

3. **Louisiana Digest—Estoppel—Par. 1, 37; Judgment—Par. 152.**
Res adjudicata and estoppel can be successfully pleaded against a party who wishes to disregard a judgment of the Supreme Court between the same parties and on the same subject matter.

Appeal from the Parish of Assumption, Hon. Samuel A. LeBlanc, Judge.

Action by Wakefield State Bank against Baker Wakefield Cypress Company. T. Fitzwilliams and Company, Ltd., et al., intervenors and third opponents. There was judgment for plaintiff and intervenor appealed.

Judgment affirmed.

Howell and Wortham, of Thibodaux, attorneys for plaintiff, appellee.

Marks and Gilbert, of Napoleonville, attorneys for defendant.

E. Gianelloni, attorney for intervenor, appellant.

ELLIOTT, J., dissents. Reasons attached.

LECHE, J. The Baker Wakefield Cypress Co., Ltd., owned a tract of land, situated in the Parish of Assumption, together with buildings and improvements thereon, consisting mainly of a sawmill and other machinery to manufacture lumber from cypress logs. In 1920 and in 1922, it mortgaged all of this property in favor of plaintiff as security for two debts aggregating some $26,000.00. It owed besides this mortgage indebtedness, various creditors, some fourteen of whom later obtained judgments against it.

The present litigation involves a contest between plaintiff as a prior mortgage creditor, and the intervenors, subsequent judgment creditors of defendant.

The judgment creditors or some of them, obtained writs of fieri facias under their judgments and seized a lot of machinery, tools, building material, etc., which had been used in the operation of the lumber mill, and on March 7, 1925, plaintiff alleging that the property seized by the intervenors formed part of the realty and was subject to its mortgage, ruled these seizing creditors into court to show cause why they should not be enjoined. The district judge tried this rule and refused to issue the injunction. The Supreme Court was then resorted to by plaintiff and that court refused to interfere with the action of the district judge. (See 158 La. 838, 104 South. 734, Fitzwilliams vs. Baker Wakefield.) The court held that where the property seized had been detached from the soil, it had lost its condition of immobility and had become movable and therefore was not affected by plaintiff's mortgage.

While the application of plaintiff for injunction was pending, viz: on March 23, 1925, plaintiff obtained executory process on its mortgage, caused to be seized the whole property of defendant, including the alleged movables seized by the intervenors. Under the writ of seizure and sale thus obtained, the sheriff advertised the sale of defendant's property to take place on May 4, 1925. On May 1, 1925, the present intervenors applied to have the property which they had previously seized, appraised and sold separately with a view of being paid out of the proceeds of same by privilege and preference over plaintiff. On the trial of these interventions, intervenors set up pleas of res adjudicata and estoppel against plaintiff and when plaintiff attempted to question the classification of the property as made by an agreement entered into on May 2, 1925, and the district court having maintained these pleas, rendered judgment in favor of intervenors, recognizing the validity of the seizures made under their judgments and ordering that intervenors and third opponents be paid by privilege and preference over plaintiff, out of the proceeds of the property which they had seized under their judgments.

The plea of res adjudicata is based upon the refusal of the district judge to grant the injunction prayed for by plaintiff in its rule of March 7, 1925, and the subsequent ruling of the Supreme Court holding

that the property seized was movable and affirming the judgment of refusal of the district judge. The plea of estoppel is based upon a written agreement signed by the plaintiff and all the intervenors on May 1, 1925.

The trial judge upheld both of these pleas and the plaintiff has appealed.

In this court plaintiff contends in argument, against the claims of third opponents and intervenors, that even if the property seized by the intervenors by virtue of their judgments, has become mobilized, its prior mortgage is good upon these movables as a chattel mortgage, as all the requirements of the law in giving a chattel mortgage were complied with in the execution of the mortgages given to it by the Baker Wakefield Cypress Co., in 1920 and 1922. In other words plaintiff contends that if its two mortgages are not good on the property in dispute as mortgages on immovable property, they are good as chattel mortgages on movables.

These mortgages are conventional agreements drawn up in conformity with the requirements of the Civil Code and being conventional agreements they must be construed as intended by the parties. It is too plain for argument that the Baker Wakefield Cypress Co. did not intend to give plaintiff a chattel mortgage and that plaintiff did not intend to accept a chattel mortgage from Baker Wakefield Cypress Co., as security for its indebtedness, when the mortgages of 1920 and 1922 were drawn up and signed by these parties. The ordinary conventional mortgage and the chattel mortgage are two separate and distinct contracts and the only quality in common between them is that they are each designed as a security or as an accessory to another contract.

The plea of res adjudicata and estoppel are so intimately connected that they may be discussed at the same time, and a ruling upon them will dispose of the case.

To re-state the facts and circumstances as we gather them from the record, it appears that third opponent first seized a lot of machinery, fixtures, attachments, etc., situated on the property of the Baker Wakefield Company. Their right to seize these things separately from the soil was attacked by the Wakefield State Bank, holder of mortgages on the realty and that question was partly settled by the decision of the Supreme Court in the matter of Wakefield vs. Fitzwilliams, 158 La. 838, 104 South. 734.

The Wakefield State Bank then foreclosed on its mortgage and also seized the same property that had previously been seized by the intervenors, as part of the realty on which bore its mortgage. The machinery, fixtures, attachments, etc., being held by the sheriff under two separate seizures, one by the intervenors and the other by the plaintiff, were then likely to become the subject of further controversy between the intervenors and the plaintiff. The decree of the Supreme Court merely decided that a "mortgage on land and buildings and all machinery located thereon, which was immovable by nature or destinaiton, held not to cover dismantled machinery, tools, implements and junk, which were shown to be movable, though formerly attached to realty, having lost immovable character on detachment".

It thus appears that this decree only settled the law of the case but did not settle the question of fact, as to what part of the property, if any or all, seized by the intervenors, had been dismantled and detached from the realty. That question of fact was still open and subject to controversy.

Such was the situation on May 2, 1925, the day before the sale was advertised to

take place, when the agreement in the record was entered into and signed by all the parties in interest.

The pertinent part of the agreement reads as follows:

"* * * it is agreed * * that the property which is still attached to the realty, to-wit: (here follows a list of articles) * * * is hereby released from the seizure of the third opponents * * * It is further agreed that the remaining property * * (seized by third opponents) * * being such property as has been detached from the realty to be sold on the day of sale, separately and under separate appraisement, from the remainder of the property, and the proceeds of said sale be held by the sheriff * * * awaiting the final determination of the issue as to whom said proceeds belong.

"It is further agreed that the said third opponents shall not be held by the fact of their having filed a third opposition in this matter, to have in any way admitted the right of plaintiff in executory process to sell the said property together with the real estate on which it has a mortgage, nor to prejudice third opponents' rights and privileges under their writs of fi. fa. This agreement being made for the convenience of the parties and to save costs * *."

The plaintiff contends that the foregoing agreement was drawn up as stated, for the sole purpose of "the convenience of the parties and to save costs". Intervenors on the other hand, contend that the purpose of the agreement was to fix the status of the property which they had seized, and to definitely settle the question as to what property was movable and liable for their prior seizure and what property was still part of the realty.

They further contend that they would not have consented to the release of their seizure on the property first enumerated in the agreement, if the plaintiff had not consented to the separate appraisement and sale of the remainder of the property seized by them; that to permit plaintiff to recall its consent to the classification of the remainder of the property, admitted by it as being detached from the realty, would deprive them of the consideration which induced them to consent to the classification of the property listed as being attached to the realty, for the reason that said property has now been sold and can no longer be appraised and sold separately. Upon this ground they base their plea of estoppel.

It is apparent, then, that the question of estoppel depends upon the construction of the written agreement between the parties.

The record further shows that when the agreement was signed, on May 2, the district judge had already, on April 28th, ordered on the petition of some of the third opponents, that all the property seized by third opponents be appraised and sold separately. So that if the agreement had not been entered into, the property which third opponents therein released from their writs of fi. fa., would also have been appraised and sold separately. There is then no doubt that the agreement to that extent was a concession by third opponents, in favor of plaintiff.

Considering therefore that the sole difference between the parties at the time the agreement was signed, only involved the status of the property seized by the intervenors and third opponents as to its character, whether movable or immovable, that the only reasonable and effective meaning that can be attributed to the clause in the agreement "for the convenience of the parties and to save costs" was to avoid further litigation as to what part of the property was movable and what part was immovable and to settle that question definitely, and considering further that if plaintiff be allowed to recall anything which it had conceded in the agree-

ment, it would be impossible to restore the situation that existed on May 2nd and to re-invest in third opponents the right to exercise the remedy to which they had then already resorted, we believe the plea of estoppel which they now urge should be sustained.

It is true that the agreement is not worded clearly as to the purpose for which we believe and hold that it was entered into, but nevertheless we see no other reasonable purpose that it could have subserved.

For these reasons, the judgment appealed from is affirmed at the costs of plaintiff and appellee.

———

### DISSENTING OPINION OF ELLIOTT, J.

I dissent from the above opinion and decree of the majority of the court, maintaining the plea of estoppel urged by intervenors J. M. Logan Lumber Co., Inc., A. W. Winnemann & Sons, E. L. Wilson Hardware Co., Ltd., Essex Sash & Door Co., Lock Moore & Co., Hillyer-Deutsch Edwards Inc., and Joubert Bros., against the right of Wakefield State Bank to show the error of fact, which the bank alleges to exist in the agreement of May 1, 1925, as regards the "Re-saw outfit complete".

The majority of the court are mistaken when they say that the plea of estoppel, urged by the above named intervenors is connected with the plea of "res adjudicata" urged by T. Fitzwilliams & Co., Ltd., and J. L. Lancaster and C. L. Wallace, Receivers, etc. The two pleas are not connected at all. Intervenors J. M. Logan Lumber Co., Inc., A. W. Wineman & Sons, E. L. Wilson Hardware Co., Ltd., Essex Sash & Door Co., Lock Moore & Co., Hillyer-Deutsch Edwards Inc., and Joubert Bros., were not parties to the suit in which the

judgment was rendered, which is the basis of the res adjudicata urged by T. Fitzwilliams & Co., Ltd., and J. L. Lancaster and C. L. Wallace, receivers, and are not parties to the plea of res adjudicata. T. Fitzwilliams & Co., Ltd., and J. L. Lancaster and C. L. Wallace, receivers, did not seize the "re-saw outfit" involved in the plea of estoppel and are therefore not parties to the plea of estoppel, nor interested therein.

The Wakefield State Bank pleads that said agreement of May 1, 1925, is in error as to the status of the "re-saw outfit" seized by the first above named intervenors, in that part of it which reads: "It is further agreed that the remaining property seized under said writs of fieri facias, being such property as has been detached from the realty, be sold separately and under separate appraisement, from the remainder of the property and the proceeds of the sale be held by the sheriff, awaiting the final determination of the issue as to whom said proceeds belong".

A further provision in the agreement states: "This agreement being made for the convenience of the parties and to save costs." That its counsel was uninformed on the morning of the sale, at the time said agreement was entered into, as to whether or not the "re-saw outfit" had been detached from the realty and signed said agreement permitting the "re-saw outfit" to be sold separately, under representations then and there made, that said "re-saw outfit" had been detached from the realty. That the fact is that said "re-saw outfit" has never been detached from the realty and that the agreement is in error as to the status of the "re-saw outfit".

Intervenors allege in their plea of estoppel "That on the first day of May, 1925, the written agreement was entered into between counsel for the plaintiff and third

opponents in this matter in which it was agreed that certain property seized by writs of fieri facias was detached from the realty and among said property detached is included the "re-saw outfit" complete, would be sold separately and without appraisement. That in said agreement, only certain articles are enumerated as still being attached to the realty and released from seizure, but that in said enumerated and listed articles, is not included the "re-saw outfit", seized by opponents, as will more fully appear by reference to said agreement filed in this case as of date May 1, 1925, and made part and parcel of this plea of estoppel.

When plaintiff offered to prove that the agreement had been signed by plaintiff and intervenors under the impression and belief that the "re-saw outfit" had been detached, when in truth and fact, it had not been detached, but was still attached to the soil, intervenors objected on the ground that the proof would be contrary to the agreement. That plaintiff was estopped by the agreement from showing contrary thereto. The court sustained the objection on the face of the papers, would not permit the proof and rendered judgment against the plaintiff, based on the agreement.

The plaintiff did not consent to the dismantlement of the saw and planing mill.

It is not alleged in the plea of estoppel, nor claimed in the objection, that the agreement of May 1, 1925, was a compromise agreement, for putting an end to a lawsuit and whereby the parties had adjusted their differences by mutual consent in the manner agreed on, which every one of them preferred to the hope of gaining, balanced by the danger of losing, C. C., Art. 3071. The agreement does not purport to have such an end in view, but enumerates certain property seized as in fact attached and states that the balance of the property seized was in fact detached from the soil.

Referring to the remainder of the property, said to be detached it provides "that the proceeds of said sale shall be held by the sheriff, awaiting the final determination of the issue as to whom said proceeds belong". This stipulation evidently means that the court is to determine, after hearing evidence, whether the remainder of the property was in fact detached from the realty or not at the time of the seizure. The plea of estoppel, if maintained, will have the effect of avoiding and rendering as naught, the agreement in that respect. The ruling practically accepts the mere contention of the intervenors as the equivalent of allegation and proof of the essentials of an estoppel in pais, when such essentials should be alleged and proved.

The pleader "must prove the very facts upon which the estoppel is based. In order that one should be denied his rights or deprived of his property by reason of an equitable estoppel, it must appear that the party pleading the estoppel has been misled to his prejudice." Hebert vs. Campagne, 144 La. 659.

The court takes the position that it is apparent on the face of the agreement that it must stand as it is written, otherwise intervenors will be prejudiced by what has been done under it. As already stated the agreement does not appear to be a "transaction" of the kind provided for by the law, C. C., Art. 3078. Therefore considerations such as governed the situation in Robertson vs. Wilcox, 3 La. Ann. 93, and like cases have no bearing.

It is not necessary to set aside the entire agreement in this case, when error is alleged to exist as to the "re-saw outfit" only and it is not claimed in the plea of estoppel, nor shown by proof, that the "re-

saw outfit" influenced the contract and brought it about. The agreement of the parties that the proceeds of the "remaining property" shall be held by the sheriff awaiting the final determination of the issue as to whom said proceeds belong, repels that idea. I think the ruling of the court should be governed by Calhoun vs. Teal, 106 La. 47, 30 South. 288; Waters, Camden and Company vs. Briscoe, 11 La. Ann. 639; Perosine LeBlanc vs. Bertant, 16 La. Ann. 294; Watkins vs. Cawthon, 33 La. Ann. 1194; Succession of Harris, 39 La. Ann. 443, 2 South. 39; Minor vs. Hart, 52 La. Ann. 395, 27 South. 99; Succession of Drysdale, 130 La. 167, 57 South. 789.

A judicial confession of a debt may be avoided by showing error of fact, C. C., Art. 1846, No. 4. A judicial confession can be revoked, if it be proved to have been made through error of fact, C. C., Art. 2291. Error may exist as to all the circumstances and facts which relate to a contract, C. C., Art. 1823, 1824, 1827. And whatever is error, can be corrected; except when the parties are estopped by some matter of law or fact, which justifies doing so.

It is my opinion that the present plea of estoppel should be overruled. That the judgment appealed from, to the extent that same is sustained, should be set aside, the case re-opened and remanded, with instructions to hear evidence on the estoppel pleaded and whether or not the agreement was signed in error by the parties to it, as to the status of the "re-saw outfit" that the actual status of the "re-saw outfit" at the time of the seizure be ascertained at the same time, all to the end that the controversy may be terminated without unnecessary delay.

I dissent from the opinion and decree as regards the question of estoppel; but agree with the majority of the court in all other respects.