CAVANAUGH, Judge
(concurring).
I concur in Judge Lottinger’s opinion but I think that the crucial point in the case is whether or not there was a real conveyance' of the property between Mrs. Mittie Ayer to Mrs. Zula Penny Morgan to definitely fix the status of the land in the community of Mrs. Zula Penny Morgan and Frank E. Morgan. When the testimony of Mrs. Morgan is analyzed and considered along with the letters she wrote to her sister, Mrs. Ayer, as well as the letter from Frank E. Morgan to Mrs. Ayer dated December 6, 1935 (Tr. 52), together with the recital in the deed executed by Mrs. Morgan on December 10, 1935, it conclusively shows that the last instrument or deed dated December 10, 1935, was merely a retrocession of the land, the title to which the testate, Mrs. Ayer, had placed' in her sister, Mrs. Morgan. This is evident by the following additional clause inserted in the deed:
“The purpose and effect of this deed is to re-transfer and replace the title to said property in the name of the said Mrs. Ayer in the same condition, as it was when transferred to the present vendor, it being her separate para-phernal property, inherited by her.”
The letter from Frank E. Morgan to Mrs. Ayer, dated December 6, 1935, just four days before the transfer was executed by his wife, Mrs. Zula Morgan, reads:
“I have your letter and also the notation made by Tom Ed. I will have the deed drawn up as soon as Zula can go to the court house and will send it to you, transf erring the place back to you. But I advise you first, last and forever, don’t put this on record until Tucker gives up the note. He is trying to hold it to beat you out of the place and has showed.it plainly to me by not acting square and answering some of my letters.
“You had better see him and ask him if he is going to force you to hire a lawyer to get it out of his hands, and the sooner the better.”
“A retrocession is not a new title: A re-trocession means the restoration of an ancient title to a-true owner. Such an act confers no new title, it merely recognizes and confirms the existing title in another.” LSA-Civil Code, Article 2272 et seq.; Payne v. Nowell, 41 La.Ann. 852, 6 So. 636; Amet v. Boyer, 43 La.Ann. 562, 9 So. 622.
“Although an act be in the form of a sale, yet from the circumstances and the stipulations it contains, it may be manifestly a retrocession.
“A retrocession may be made by the voluntary act of the parties, where the rights of third persons are not prejudiced thereby.” Chretien v. Richardson, 6 La.Ann. 2.
I know of no law which would prevent two sisters from dealing with the separate property of one as was done in this case and which was never intended to be transferred to the community existing between Zula Morgan and her husband, Frank EC Morgan.
We know that property purchased during the marriage is presumed to be community property and it takes strong and substantial evidence to rebut the presumption, and that the wife has to prove that she *173 bad. tbe separate ' funds to purchase the property and tbe source from whence they came as well as that they were under her separate management and control. That law is applicable to real transactions and does not apply when the evidence unequivocally shows that there was no intention of the husband and wife to purchase the property. The transaction in the case at bar is entirely different from the transactions in Houghton v. Hall, 177 La. 237, 148 So. 37, and Johnson v. Johnson, 213 La. 1092, 36 So.2d 396. The proof here is not parol, but is in writing.
I find the following in Volume 17, page 462, Tulane Law Review:
“In a simulated contract there is an apparent expression of the will creating a false belief to the external world and a true representation of the will which remains a secret between the ■contracting parties. The secret act which is reduced to writing is called a counter letter. Inasmuch as parol evidence cannot be admitted either against or beyond what is contained in an authentic act, the only way in which the verity and reality of an authentic act may be attacked by the parties to the act is: (1) by means of a counter letter, and (2) by the answers of the opposing party to interrogatories on facts and articles. However, this 'rule of exclusion is not binding on third parties. It is also important to note that this rule applies to movables as well as to immovables.
“Where a counter letter' is duly recorded it affects all persons, even creditors, from the time of recording. An unrecorded counter letter can have no effect except between the parties. But á counter letter is nonetheless effective between the parties because it is under private signature. In order for a document to constitute a counter letter it is not necessary that it should be contemporaneous with the act attacked. It is sufficient to set aside the act if the writing offered against it, of whatever date, contains an admission that the alleged sale was a simulation. Nor is the plaintiff in such action estopped by any stipulation in the act, or by the warranty contained therein, from proving the falsity of the act. However, where a sale has a real cause it cannot be invalidated by the production of a counter letter. The counter letter is valid against all persons except creditors and bona fide purchasers.”
I believe that the affidavit executed by the plaintiffs in this case is in the nature of a counter letter and clearly states that at the time it was executed they had no interest in the property and must be considered as an effective renunciation. Palmes v. Kuhn, 46 La.Ann. 906, 15 So. 167:
The deeds in question were executed in 1935. Plaintiffs’ father died in 1937. The testator, Mrs. Ayer, died in 1939. The will was probated according to the judgment in the record in October, 1939. This suit was not filed until October 22, 1949, or almost 14 year9 after the deeds were executed and 10 years after the affidavit or counter letter was signed. This affidavit had been on record since 1939. Although the counter letter or affidavit is under private signature it is none tbe less effective as a renunciation under Palmes v. Kuhn, supra.
If the deed from Mrs. Morgan to Mrs. Ayer dated December 10, 1935, cannot be considered as an acknowledged reinvestment of title in her sister, Mrs. Ayer, and if the defendant had properly pled the 10 years prescription acquirendi causa under Article 3478 of the LSA-Civil Code under that deed, we wouid have to sustain it because under the evidence contained in the record there was certainly good faith on .the part of Mrs. Ayer and she received a title translative of property, believing that she was being reinvested with the title to the property, which she had formerly conveyed. It goes without saying that plaintiffs’ father knew that the property had been conveyed back to Mrs. Ayer and that she had always had actual physical corporeal possession of the property. She continued to exercise actual corporeal possession of the *174 property ■ after her reacquisition and that h^r possession continued in her husband, Gilbert Ayer, and Mrs. Hathaway, her niece, legatee of the naked ownership after her death. I do not understand why the defendant’s attorney did not plead the 10 year prescription under the deed executed by Mrs. Morgan to Mrs. Ayer. The plea urged is general and not specific. The court cannot consider it.
Succession of Drysdale, 130 La. 167, 57 So. 789; Middleton v. Grishman, 7 La.App. 353; Succession of Thompson, 191 La. 480, 186 So. 1.
Rehearing denied.
TATE, J., recused.
CAVANAUGH, Judge ad hoc by appointment.